TONY BAKUTIS *et al.*, Plaintiffs-Appellees, *v.* JOHN E. SCHRAMM *et al.*, Defendants-Appellants.

Fourth District    No. 4—82—0685

Opinion filed April 25, 1983.

Presney, Huffman, Kelly & Appleton, of Springfield, for appellants.

Maurice W. Kepner, of Kepner and Giganti, of Springfield, for appellees.

JUSTICE GREEN delivered the opinion of the court:

This case concerns a dispute over ownership of a somewhat rectangular strip of rural land extending approximately 496 feet from

south to north, 60 feet in width at the south end and 45 feet in width at the north end.

On August 28, 1980, plaintiffs, Tony and Alice Bakutis, brought this action in the circuit court of Sangamon County against defendants, John E. and Nina R. Schramm. Plaintiffs sought a declaration that (1) plaintiffs were the owners of the strip, and (2) the east line of the strip is the boundary line between plaintiffs' property and that of defendants. Plaintiffs also requested that defendants be enjoined from "farming, using, and going upon and interfering with" plaintiffs' possession of the strip. After an evidentiary hearing on the merits, the circuit court entered an order on September 16, 1982, granting plaintiffs the relief requested. Defendants appeal. We affirm.

The contested strip lies in the south 15 acres of the East Half of the Northeast Quarter of Section 10, in Township 14 North, Range 7, West of the 3rd Principal Meridian, situated in Sangamon County, Illinois. By mesne conveyances, the west 11 acres of the aforesaid south 15 acres have been conveyed to plaintiffs, and the east four acres have been conveyed to defendants. Plaintiffs do not dispute that the west edge of the contested strip divides the 11-acre tract from the four-acre tract. Rather, they claim ownership in the contested area by adverse possession. The trial court agreed and granted relief accordingly.

In *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 421 N.E.2d 170, the supreme court restated the long-accepted elements necessary to be proved in order to establish title under the 20-year adverse possession doctrine incorporated in section 1 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 1). To do so, "there must be 20 years' concurrent existence of the five elements: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner." (85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.) The evidence here was sufficient to prove such adverse possession by plaintiffs and their predecessors at least from 1951 until 1972.

The evidence showed that plaintiffs purchased the west 11 acres from Russell W. and Florence A. King by deed in 1971, and that those grantors purchased the property by deed in 1953 from the late Richard J. Sprinkel who had obtained title by inheritance in 1951. Betty Sprinkel, Richard's widow, testified she was familiar with the land as early as 1943. She stated that, from that date, there was a fence in the area of the east boundary of the tract in dispute which was considered to be the east boundary of the 11-acre tract. She further testified that land in the tract west of the fence was farmed by their ten-

ant. She also testified that a road extending through the disputed tract was used by the owners and persons in possession of the 11-acre tract to reach land owned by them north of the tract. Russell W. King testified that when he bought the land, Richard J. Sprinkel and a banker told him that the previously mentioned fence was the east boundary of the land he was purchasing. He stated that he plowed portions of the disputed tract up to the fence line, and that defendants' predecessors in title did not use the lane which went through the disputed tract.

Tony Bakutis testified that at the time of his purchase, Russell W. King told him that the fence line previously referred to was the east boundary of the tract being conveyed to him. Bakutis further testified that he and his tenants used a road that went through a portion of the strip. He also related that he had his tenant develop a grass waterway over portions of the strip.

Defendants obtained title to their four-acre parcel by conveyance from William D. and Marie James in 1972. They presented some evidence that, thereafter, they challenged plaintiffs' possession of the tract. However, as we have determined that plaintiffs and their predecessors sufficiently proved their 20 years of adverse possession prior to 1972, we need not consider this evidence.

Defendants dispute the sufficiency of the proof of plaintiffs' and their predecessors' adverse possession from 1951 until 1972 on the theories that: (1) The adverse possession of the various owners of the west 11 acres cannot be tacked; and (2) the Kings took several actions which constituted a recognition that they did not own the disputed tract.

In support of defendants' first contention, they cite *Duck Island Hunting & Fishing Club v. Whitnah* (1922), 306 Ill. 284, 137 N.E. 840, *Illinois Central R.R. Co. v. Hatter* (1904), 207 Ill. 88, 69 N.E. 751, and *Baumann v. Lawndale National Bank* (1977), 45 Ill. App. 3d 328, 359 N.E.2d 1086, for the rule that adverse possession of land adjacent to that of land conveyed cannot be tacked from vendor to purchaser, unless there is proof that the vendor delivered possession of the land not covered by the terms of the conveyance by indicating that the land was intended to be conveyed. Here, there was evidence which the trier of fact could have accepted that, at the time of the Sprinkel and King conveyances, a grantor told a grantee that the land in the disputed tract was part of the land being sold. The evidence supported the trial court's conclusion that the adverse possessions could be tacked.

In 1954, the Kings conveyed an oil and gas lease over their prop-

erty, and in 1966 the Kings conveyed a right-of-way over their property to a public utility. In both cases the conveyancing documents described only the west 11 acres of the 15-acre tract. According to the measurements now accepted by the parties, neither conveyance covered the tract in question. Similarly, in 1955 the Kings filed a request to detach the west 11 acres from the village of Loami. Defendants maintain that since the legal descriptions used in these documents did not include the disputed strip, plaintiffs' predecessors knew they did not have right to the disputed strip and thus, their possession of the strip was not adverse. Similarly, in 1956 when the Kings were the owners of the west 11 acres and persons named Davis the owners of the east four acres, the parties exchanged quitclaim deeds to the tract of the others. The Kings made a quitclaim deed to the Davises of the east four acres, and the Davises made one to the Kings of the west 11 acres. Russell W. King testified that this was done to clear matters on the Davises' abstract.

The opinion in *Joiner* speaks to defendants' contentions. The situation there is similar in many respects to that in the case at bar. There, suit was brought to quiet title to a strip of land adjacent to property purchased by those plaintiffs in 1951 but was not actually part of the property described in the conveyance. The evidence indicated that the plaintiffs were told by the sellers that the strip was part of the property conveyed. The plaintiffs had mowed grass on the area, raked leaves on it, and planted and maintained shrubbery on it for a period in excess of 20 years. A tree and brush line formed a definitely ascertainable boundary on the side of the strip away from the plaintiffs' property.

The *Joiner* plaintiffs had believed for 17 years that they held legal title to the strip. However, in 1977, a survey revealed that legal title was in the defendants. In support of their claim to the strip, the defendants maintained that after 1977, the plaintiffs' possession was no longer adverse because of plaintiffs' knowledge of their lack of title. This position was supported by the decision in *Hansen v. National Bank* (1978), 59 Ill. App. 3d 877, 376 N.E.2d 365. The supreme court overruled *Hansen*, stating:

> "The essence of the doctrine of adverse possession is the holding of the land adversely to the true titleholder. 'A party, claiming title by adverse possession, always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim not upon a title in himself, as the true owner, but upon holding adversely to the true owner for the period prescribed by the Statute of Limitations.'

(*Mercer v. Wayman* (1956), 9 Ill. 2d 441, 445-46; *White v. Harris* (1903), 206 Ill. 584, 592; 3 Am. Jur. 2d *Adverse Possession* sec. 7, at 87 (1962).) To hold that because the possessor knows or should know that record title is in another precludes any possibility of the possessor's title being adverse is the antithesis of the doctrine of adverse possession as it has existed in this State. (*Illinois Central R.R. Co. v. Houghton* (1888), 126 Ill. 233.)" *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 80-81, 421 N.E.2d 170, 173-74.

■ Under the holding in *Joiner*, even if the petition and various deeds made by the Kings were taken as acknowledgments by them that they had no legal title to the disputed tract, that would make no difference. Their knowledge of lack of title would be entirely consistent with their possession being adverse. Likewise, the fact that the property described in the various conveyances by which plaintiffs and their predecessors obtained title did not include the tract was not significant. The *Joiner* court stated:

"Since the claim to ownership need not be spoken or supported by title documents, and one's actions can adequately convey the intent to claim title adversely to all the world including the titleholder (*Walter v. Jones* (1958), 15 Ill. 2d 220), it is apparent that what the property description in a deed held by the adverse possessor excludes or includes is irrelevant to the adverse-possession issues. *Schwartz v. Piper* (1954), 4 Ill. 2d 488, 493." 85 Ill. 2d 74, 82, 421 N.E.2d 170, 174.

■ The trial court was not required to find that the exchange of deeds between the Kings and the Davises constituted an agreement that the Davises were the owners of the tract. The stated reason for the exchange was uncertain. The evidence showed that there had been different descriptions used in the various conveyances in the respective chains of title, and the exchange could have been made for that reason rather than with intent upon the part of the Kings to convey the tract.

Defendants also question whether the east boundary of the land over which plaintiffs and their predecessors exercised adverse possession was adequately established. In *Joiner*, the court also spoke to this issue, stating:

" 'The proof must be such as to establish with reasonable certainty the location of the boundaries of the tract to which the five elements of adverse possession are applied and all of the elements must extend to the tract so claimed. While it is not necessary that the land should be enclosed by a fence, the

boundaries must be susceptible of specific and definite location.' " 85 Ill. 2d 74, 83, 421 N.E.2d 170, 175.

Here, plaintiffs established the location of the boundary fence line through the testimony of their predecessors in title as well as the physical evidence of a concrete right-of-way marker on the south side of the property near the county road, and a hedge post on the north which established the east line of the disputed tract. Although a fence no longer existed between the two markers, the proof was sufficient to show its former location with reasonable certainty.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

WEBBER, P.J., and MILLS, J., concur.