LOWELL PETERS *et al.*, Plaintiffs-Appellants, v. GREENMOUNT CEMETERY ASSOCIATION, Defendant-Appellee.

Fourth District   No. 4—93—0787

Argued February 16, 1994.—Opinion filed March 29, 1994.—Rehearing denied May 9, 1994.

F. Donald Heck, Jr. (argued), of Pollock, Ennis & Heck, of Quincy, for appellants.

Robert J. Bier (argued), of Bier & Welborn, of Quincy, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs Lowell and Beverly Peters filed a complaint seeking title to real estate by adverse possession. Defendant filed a cross-complaint seeking ejectment and monetary damages in excess of $15,000. Following a bench trial, the trial court entered judgment against plaintiffs on the adverse possession count. The court denied defendant's claim for monetary damages, but entered judgment for ejectment and costs of suit. Plaintiffs appeal. We reverse and remand.

Lowell and his wife Beverly took title to a residence at 1620 Harrison Street, Quincy, Illinois, on March 30, 1966. The tract was rectangular, measuring approximately 100 feet east to west and 267 feet north to south. The property was adjoined on the east by a tract measuring $16^1/2$ feet by 267 feet (the $16^1/2$-foot tract). The property south of the 1620 Harrison tract and the $16^1/2$-foot tract was owned by Greenmount Cemetery. A subdivision was located east of the $16^1/2$-foot tract. When he purchased 1620 Harrison, Lowell thought the $16^1/2$-foot tract was abandoned. Shortly thereafter Lowell discovered the tract belonged to Greenmount Cemetery.

Within a few weeks of taking possession of 1620 Harrison in 1966, Lowell built a wire fence enclosing his backyard. The purpose of the fence was to keep Lowell's children in the yard. Before he built the fence Lowell went to the office on the Greenmount Cemetery property, and asked the caretaker for permission to build the fence on the east line of the $16^1/2$-foot tract. The caretaker said yes, Lowell could build a fence, but then called back 15 minutes later and told Lowell not to build the fence there. Lowell went ahead and built a fence anyway, building it down the middle of the $16^1/2$-foot strip, building it south from a point near the end of his driveway. Lowell

intentionally did not build the fence on his own east line, but instead built the fence down the middle of the 16½-foot tract, for two reasons: (1) he thought the 16½-foot tract was abandoned, and (2) there was a clothesline on Lowell's property which had posts on the 16½-foot tract. About 1969 or 1970 Lowell built a wood fence along the north part of the wire fence, just west of the wire fence.

As a part of enclosing his backyard, Lowell put a fence along the south line of the 1620 Harrison tract, thereby separating 1620 Harrison from the Cemetery property. Lowell's south-line fence connected on the east with the fence Lowell had built down the middle of the 16½-foot tract. A few years after Lowell built his south-line fence, Howard Stephens, the Cemetery superintendent, told Lowell to take down that fence because the Cemetery intended to put a new fence along that line. The Cemetery then built a chain-link fence along the south line of the 1620 Harrison tract which continued east along the south line of the 16½-foot tract and on further between the Cemetery and the subdivision. After building this fence the Cemetery had no access to any part of the 16½-foot tract from its property to the south.

Also in 1966 Lowell planted trees on the 16½-foot tract, to the west of his wire fence, and across the full width of the 16½-foot tract in the area north of his wire fence. Those trees are now large mature trees. Lowell cut the grass and kept the underbrush down on the entire 16½-foot tract, on both sides of the wire fence, from 1966 to 1987 or 1988. During that time Greenmount Cemetery never came on the 16½-foot tract to cut grass, do maintenance, or for any other purposes. The Cemetery never complained about any of Lowell's activities until after 1990.

In May or June 1986, Lowell had some problems with a neighbor in the subdivision to the east who had taken down the neighbor's fence along the east line of the 16½-foot tract, then occupied a part of the east half of the 16½-foot tract up to Lowell's wire fence. Lowell met with the Cemetery Association and asked if he could build a fence along the east line of the 16½-foot tract, which would connect with the Cemetery's fence along the south line of the 16½-foot tract. The Cemetery denied the request, and instead built its own chain-link fence along the east line of the 16½-foot tract, from the north line of the cemetery property to a point adjacent to the northern end of Lowell's wire and wood fences. At the same time the Cemetery put a gate in its chain-link fence at the south end of the 16½-foot tract, giving it access to the tract (but only the east half) for the first time in approximately 20 years.

At the time Lowell purchased 1620 Harrison in 1966, it had a

driveway which butted up against the west line of the $16^1/_2$-foot tract. The second year Lowell lived at 1620 Harrison he poured a driveway which encroached about three feet onto the $16^1/_2$-foot tract. He did not ask permission of the Cemetery to make that encroachment, and no one ever said anything to him about it. In August 1990, Lowell put in another driveway which encroached even further. Lowell did not ask permission for that encroachment. After the 1990 driveway was poured, representatives of the Cemetery contacted Lowell and informed him the driveway crossed the boundary line onto the Cemetery's property.

Lowell spoke to Howard Stephens, the Cemetery superintendent, perhaps three or four times. One occasion was the time mentioned when the Cemetery put in the new property line fence along the south line of the 1620 Harrison tract. Lowell spoke to Stephens several times in connection with that project. Another time was when Stephens sprayed weed killer along that fence and informed Lowell not to have anything growing in the Cemetery fence. Another time was when Lowell bought some cemetery lots. Lowell never asked anyone connected with the Cemetery for permission to be on the portion of the $16^1/_2$-foot tract he claimed. According to Lowell, no one connected with the Cemetery ever gave him permission to do any of the things which he did on the $16^1/_2$-foot tract.

■ A party claiming property by adverse possession under the 20-year statute must show five elements of possession for the duration of the statutory period (Ill. Rev. Stat. 1991, ch. 110, par. 13—101). Possession must be (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive, and (5) under claim of title inconsistent with that of the true owner. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174; *Hermes v. Fischer* (1992), 226 Ill. App. 3d 820, 824, 589 N.E.2d 1005, 1008.) There is a presumption in favor of the true owner, and the proof required to overcome the presumption must be strict, clear, and unequivocal. *Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174; *Hermes*, 226 Ill. App. 3d at 824, 589 N.E.2d at 1008.

■ Here, while the trial court acknowledged in its order that plaintiffs established their possession was continuous and actual for more than 20 years, it found plaintiffs did not show possession had been hostile. "Hostile" possession does not imply actual ill will, but only the assertion of ownership incompatible with that of the true owner and all others. (*Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174; *Hermes*, 226 Ill. App. 3d at 824, 589 N.E.2d at 1009.) The overwhelming evidence here is that plaintiffs did assert ownership of the property incompatible with that of the Cemetery. Lowell, without the Cemetery's permission, planted trees on the property, maintained the

property, and erected a fence down the middle of the disputed tract establishing the boundary of plaintiffs' claim. In essence, plaintiffs used the property as their own, thus satisfying the hostility requirement for adverse possession.

■ The trial court also found plaintiffs' possession was not under claim of title inconsistent with the Cemetery. The fact that plaintiffs knew the Cemetery held title to the property does not, by itself, preclude plaintiffs from claiming the property by adverse possession. Such a holding would be the antithesis of the doctrine of adverse possession as it has existed in Illinois. (*Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174.) The possessor's good faith in claiming title is not relevant under the adverse possession doctrine. (*Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174.) Using and controlling property as owner is the ordinary mode of asserting a claim of title inconsistent with that of the true owner. (*Joiner*, 85 Ill. 2d at 82, 421 N.E.2d at 174.) This claim of title or claim of right requirement should not be confused with the "color of title" requirement of the seven-year limitation statute (Ill. Rev. Stat. 1991, ch. 110, par. 13—109), which requires that claimant have a document which appears to invest title in the claimant. (*In re Estate of Tobin* (1988), 176 Ill. App. 3d 580, 586, 531 N.E.2d 440, 444; see also Cribbet, Law of Property 235-36 (1962).) Here, as noted above, Lowell used and controlled the property as his own (building a fence, expanding the driveway, planting trees, maintaining the lawn) inconsistent with the title of the Cemetery and thus satisfied the claim of title requirement for adverse possession under the 20-year statute.

■ Finally, the trial court found plaintiffs did not establish their possession was exclusive. Exclusivity means the claimant's rights do not depend on the rights of others. (See *Page v. Bloom* (1991), 223 Ill. App. 3d 18, 22, 584 N.E.2d 813, 815; *Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 579, 440 N.E.2d 647, 649.) The trial court in its judgment order stated:

> "In this case the [p]laintiffs periodically throughout the tenure of their possession contacted and otherwise spoke with authorized representatives of the [d]efendant seeking permission for various acts of possession including but not limited to their request in 1986 to erect a fence on the eastern-most boundary line of the subject parcel."

We have searched the record for such requests by plaintiffs, other than the 1966 request and the 1986 request, and found none.

Lowell testified he asked for permission in 1966 to build a fence down the east line of the disputed tract. Even though the Cemetery denied his request for permission, Lowell built a fence down the

middle of the tract within a few weeks of taking possession of 1620 Harrison. The trial court noted it was significant Lowell requested permission in 1986 to erect a fence along the east line of the disputed tract to connect to the existing Cemetery fence. The property upon which that east-line fence was eventually built was not part of the property plaintiffs claimed through adverse possession. Plaintiffs claimed the entire $16^1/_2$-foot tract from Harrison Street north of the wire fence, but only an $8^1/_2$-foot tract south of that, the east boundary claimed by plaintiffs being the wire fence. It was in the area east of the wire fence where plaintiffs asked to build another fence, to keep the neighbors from using that area for recreation. Since plaintiffs did not claim that area through adverse possession, the fact Lowell asked permission to build a fence on it is irrelevant.

The trial court also found that plaintiffs did not have exclusive possession of the subject parcel because maintenance workers from the Cemetery periodically cut grass and performed other maintenance activities upon the premises. Again we have carefully searched the record and find no support for such a finding. The Cemetery never came inside the wire fence after 1966. The Cemetery did not have the ability to enter the $16^1/_2$-foot tract from the Cemetery's property after 1966, until it put in a gate in 1986. After 1986 the Cemetery maintained a portion of the $16^1/_2$-foot tract east of the wire fence, but that area is not claimed by plaintiffs, and that maintenance is irrelevant.

From 1966 to 1990 plaintiffs used the property inside the wire fence as their own and their use did not depend on the rights of anyone else. The plaintiffs' use was exclusive for adverse possession purposes.

■ All the elements of adverse possession were established during plaintiffs' possession of the disputed tract for more than the required 20 years and the judgment in favor of defendant was against the manifest weight of the evidence. We reverse the judgment of the circuit court of Adams County and remand with instructions to enter judgment in favor of plaintiffs.

Reversed and remanded.

KNECHT and STEIGMANN, JJ., concur.