DELORES STANKEWITZ *et al.*, Plaintiffs-Appellees, v. JAMES W. BOHO *et al.*, Defendants-Appellants.

Second District    No. 2—96—0797

Opinion filed April 9, 1997.

516

Philip A. Jackman, of Galena, for appellants.

Robert A. Bush, of Bush & Bush, P.C., of Elizabeth, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Defendants, James and Mary Ellen Boho, appeal the circuit court's order finding that plaintiffs, Delores Stankewitz, Jane Van Hamme, LaVonne Ertmer, and Maxine Buffo, had obtained title by adverse possession to approximately three acres of land of which defendants are the legal titleholders. Defendants' contentions can be summarized as follows: (1) the evidence was insufficient to support the court's finding of adverse possession and (2) plaintiffs failed to establish the boundaries of the disputed parcel.

Plaintiffs and defendants own adjacent parcels of land in Elizabeth Township, Jo Daviess County. Plaintiffs' parcel borders defendants' to the east and south. Defendants purchased their parcel in 1993 from William Brown, who had acquired it from his aunt and uncle, William and Gladys Mougin, in 1975. The parcel had been in the Brown-Mougin family since at least the mid-1800s.

Plaintiffs acquired their parcel from their mother, Orphie Mitchell, in 1991. She and her late husband, Lawrence Mitchell, purchased the tract from Alice Virtue in 1959.

Shortly after acquiring their property, the Mitchells began leasing the adjacent tract from the Mougins and later from Brown. They used both parcels to run cattle.

When the Mitchells purchased their parcel, an irregular, or "zigzag," fence existed on the southeast quarter of the adjacent Mougin-Brown property. This fence ran roughly in a semicircle and approximately followed the crest of a ridge across the property. No posts were used in its construction; the wire was simply strung from tree to tree. In many places, witnesses found wire running through

the center of tree trunks, indicating that the wire had simply been nailed to the trees when the trees were young. The trees then grew around the wire.

The fence had existed at that location longer than any of the witnesses could remember. No one knew who originally put up the fence or why it was done. While the Mitchells leased the land, the fence was allowed to deteriorate so that cows could graze on both parcels.

In 1979, Jerry Ertmer, the husband of plaintiff LaVonne Ertmer, took over the farming operation from his father-in-law, Lawrence Mitchell. Shortly thereafter the Mitchells and Ertmers became embroiled in a dispute with Brown regarding the leasing of the property. In 1983, the parties agreed to terminate the lease.

Daryl "Dude" Schemehorn was hired to construct a new fence between the Brown and Mitchell properties. Jerry Ertmer instructed Schemehorn to follow the existing fence line.

As noted previously, the Mitchell parcel, now owned by plaintiffs, abuts the Mougin-Brown parcel, now owned by defendants, on the east and south. The Mitchell parcel forms a backward "L." The Brown tract fits into the crook of the "L" at right angles. It is undisputed that the Schemehorn fence approximately followed the line of the old zig-zag fence across the ridge rather than the right-angle line formed by the intersection of the two properties.

Eventually the Schemehorn fence, too, was allowed to deteriorate. When defendant James Boho purchased the property in 1993, the fence had been breached in at least four places. When Boho walked the property, he also saw remnants of an old fence along the legal boundary of the two properties. These remnants of wire and treated boards were above ground and plainly visible.

After the purchase, Boho had a new survey done of the property. He then hired Darrell Hulscher to remove the remnants of the Schemehorn fence and install a new fence along the legal boundary line as defined by the survey. Shortly thereafter, plaintiffs initiated this lawsuit.

Plaintiffs' primary contention at trial was that all the relevant parties mistakenly believed that the zig-zag fence formed the boundary between the parcels. Thus, plaintiffs contended that the lease of the adjacent tract did not cover the disputed area because the parties mistakenly thought that the Mitchells already owned it. In response, defendants contended that the zig-zag fence was merely a "convenience fence," installed at that location because the rugged terrain rendered the legal boundary between the parcels nearly inaccessible. Defendants argued that the lease covered the entire Mougin-Brown parcel, including the disputed area, rendering the use of that area permissive rather than adverse.

The trial court found that this was a mistaken boundary case. The court found that plaintiffs had established their continuous adverse use of the disputed parcel bordered by the "Schemehorn fence line" for the requisite 20-year period. Defendants perfected this appeal.

On appeal, defendants raise three arguments questioning the sufficiency of the evidence to establish plaintiffs' adverse use of the disputed parcel. However, our resolution of this case makes consideration of this issue unnecessary. Instead, we consider defendants' final issue: whether plaintiffs adequately established the boundaries of the disputed parcel.

■ To establish title by adverse possession under the 20-year limitations statute (735 ILCS 5/13—101 (West 1994)), a party must prove that his possession was (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under a claim of title inconsistent with that of the true owner. *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981); *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1035 (1996). Further, because the possession must be of a definitely defined tract, an adverse possessor bears the burden of establishing by clear and convincing evidence the location of the boundary. *Schwartz v. Piper*, 4 Ill. 2d 488, 493 (1954); *Welliver*, 278 Ill. App. 3d at 1035-36.

In *Schwartz*, the only visible monument marking the boundary of the disputed parcel was an iron fence erected in 1903 and torn down more than 30 years before the suit was filed. The only testimony regarding the location of the fence was "so vague and indefinite as to make it impossible for the court to ascertain the location of the line with reasonable certainty." *Schwartz*, 4 Ill. 2d at 494. Therefore, plaintiffs' case failed.

■ Similarly, in this case, the only visible markers of the boundaries of the disputed area were fences that had been removed prior to trial. No evidence established the precise line of the Schemehorn fence that was removed in 1993. The Schemehorn fence replaced an older fence that formed an extremely irregular arc from tree to tree across the southeastern tip of the property.

Even if it were possible to reconstruct the Schemehorn fence line from the record, plaintiffs would not be able to meet their burden of establishing the boundary of the disputed parcel. There was testimony that the Schemehorn fence ran as much as 30 to 40 feet away from the older fence at some points. Again, no one testified to the precise line formed by the older, zig-zag fence.

Plaintiffs' argument on this point consists of distinguishing a case defendants cite on the ground that in that case no fence was

involved. Plaintiffs maintain that in this case "there was sufficient physical evidence to define the original property line fence prior to 1983 and the second fence put in by Daryl Schemehorn in 1983." However, they fail to cite to such evidence in the record, and our review of the record discloses none. As in *Schwartz*, the witnesses' testimony concerning the location of the old fence was vague and inconclusive. Even plaintiffs' brief demonstrates uncertainty regarding the precise parameters of the disputed parcel, defining it as approximately 2.5 acres to 3.5 acres.

Because it is impossible to determine the precise boundaries of the parcel claimed, plaintiffs failed to establish an element of their case. Thus, the judgment in favor of plaintiffs must be reversed.

The judgment of the circuit court of Jo Daviess County is reversed.

Reversed.

GEIGER, P.J., and RATHJE, J., concur.