No. 2--01--1298

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

GERALD F. KNAUF and JYMEE N. ) Appeal from the Circuit Court

KNAUF, as Trustees of the Knauf ) of Kendall County.

Family Trust,  )

  )

Plaintiffs-Appellees, )

) 

v. ) No. 00--CH--0051

)

JOHN M. RYAN, GERI S. RYAN,  ) 

PETER CATTANEO, and KRISTEN  )    

CATTANEO,  ) Honorable 

) Leonard J. Wojtecki,

Defendants-Appellants. ) Judge, Presiding.

_________________________________________________________________

 

     JUSTICE KAPALA delivered the opinion of the court:

Claiming title by adverse possession, plaintiffs, Gerald F. Knauf and Jymee N. Knauf, as trustees of the Knauf Family Trust (Trust), sued to quiet title to a strip of land between property owned by the Trust and property owned by defendants, John M. Ryan, Geri S. Ryan, Peter Cattaneo, and Kristen Cattaneo, and to eject defendants from the strip.  After a bench trial, the court entered a judgment for plaintiffs.  On appeal, defendants argue that the judgment is against the manifest weight of the evidence.  We affirm.

In 1972, Gerald and Jymee Knauf purchased property lying in section 24-37-8 in Oswego.  The property has frontage on the north side of Woolley Road.  Metal stakes purportedly marked the property's boundaries.  According to a later survey, the western boundary actually was several feet east of the line marked by the  stakes.  The contested strip is 7.96 feet wide at the south end of the property and 5.22 feet wide at the north end.  Plaintiffs claimed by adverse possession ownership of the disputed strip.

According to the exhibits introduced during the trial, plaintiffs' property is approximately 895 feet by 150 feet.  The western boundary of the parcel is 895 feet long and abuts defendants' property.  During plaintiffs' case in chief, Gerald Knauf testified that he purchased the property from James Wormley in November 1972.  At the time of the purchase, Wormley walked with Gerald around the property and showed him the stakes ostensibly marking the boundaries.  Gerald did not have the property surveyed.  He tore down a barn on the property and built a new barn.  He had a house built on the property in 1975.  He and his wife Jymee moved into the house in 1976 and have lived there continuously since then.  Sometime after 1976, the Knaufs conveyed the property to the Trust.

In 1972, Paul Krahn owned the property to the west.  In 1973, Krahn erected a corner fence along the southeast corner of his property as indicated by the stakes.  Later, Krahn kept cattle on his property and, accordingly, erected another fence running along part of the stake line.  The southeast part of Krahn's property was a plowed field.  In 1999, defendants erected another fence along the boundary.  The fences and the plowed field did not encroach upon the property boundary indicated by the stakes.

In 1976, plaintiffs planted 37 crab apple and 12 evergreen trees along the stake line and in 1978 put in a rock garden.  According to the exhibits, the trees run along about half of the length of the stake line.  Also near the line is a telephone utility box that bears plaintiffs' address.  The trees, telephone box, and garden lie in the disputed strip.  Plaintiffs' lawn continues at least up to the stake line, where it is met by a plowed field.  Plaintiffs maintained the strip, and no one else used or claimed to own it.

In 1998, defendants purchased the property.  In October 1998, Gerald noticed a new stake, which was several feet east of the original stake line.  Gerald talked to a surveyor, James Olsen, who told Gerald that he surveyed the property and concluded that the  boundary actually was at the place marked by the new stake.

Gerald testified that, more than once during 1998, John and Geri Ryan told Gerald that they knew the strip belonged to him and that they would not challenge his right to it.  During the summer of 2000, Gerald asked John "what it would take to get" the strip, and John replied, "don't worry about it.  We're not going to fight you for it."

Gerald acknowledged receiving from defendants a letter dated February 13, 1999.  The letter informed the Knaufs that defendants were planning to erect a fence about eight feet west "of our designated property line."  In the letter, defendants granted the Knaufs permission to use the strip between the lot line shown in Olsen's survey and the new fence.  They stated, however, that the grant of permission "in no way constitutes relinquishment of our ownership or rights to this parcel."  The letter informed the Knaufs that if they sold their property, the new owner would not be allowed to use the strip without defendants' express written permission.

Jymee Knauf testified that, after she and Gerald saw the new stake, they talked to the Ryans about it.  The Ryans said that they understood that the strip was the Knaufs' property and that they would not try to take it from them.

William Wingstedt, a licenced land surveyor, testified that plaintiffs hired him to survey their property in July 2000.  While surveying the property, Wingstedt encountered the original stakes.  They were located in the correct place according to surveys performed during the 1960s, when the boundary was created.  Wingstedt opined that, although Olsen's survey was not inaccurate, the original stakes marked the true western boundary.  He explained that "Olsen surveyed the entire section and used the rules of construction for subdividing the section, which there's no evidence that that had previously been done."  Wingstedt relied on previous surveys of the area.  Also, Wingstedt explained that he used Stewart Road, which is approximately three-eighths of a mile east of plaintiffs' property, as a reference point and that the original stakes marked the proper distance from Stewart Road as stated in the deed.

Plaintiffs rested.  John Ryan testified that he moved next to the Knaufs in October 1998.  The Knaufs asked him and his wife, Geri, to grant them a quitclaim deed to the strip.  John and Geri replied that they wanted to be good neighbors and therefore would not interfere with the Knaufs' use of the strip.  Also, the Ryans agreed to build their fence according to where the Knaufs thought the property line was.

Olsen, a licenced land surveyor, testified that in 1976 his  firm purchased DeGraff Loos and Associates (DeGraff), the firm that surveyed the properties in 1971.  Olsen was asked to survey defendants' property because it was for sale.  Olsen opined that the 1971 survey was inaccurate.  Olsen believed that DeGraff did not actually determine the center, or "quarter corners," of section 24-37-8 but merely accepted a fence along the eastern boundary of defendants' property.  The center of the section is located approximately at the center of the intersection of Woolley and Stewart Roads.  To plot the quarters of the section, Olsen used laser equipment that was not available to DeGraff in 1971.  Olsen explained that the fence along the eastern boundary of defendants' property is several feet west of the actual boundary.

The trial court found that plaintiffs established title by adverse possession and ruled in their favor.  Defendants timely appealed.

Property is not taken by adverse possession unless the following elements exist concurrently for the statutory period of 20 years: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under a claim of title inconsistent with that of the true owner.  
Illinois District of American Turners, Inc. v. Rieger
, 329 Ill. App. 3d 1063, 1073 (2002); see also 735 ILCS 5/13--101 (West 2000).  All presumptions are in favor of the title owner, and the party claiming title by adverse possession must prove each element by clear and unequivocal evidence.  
American Turners
, 329 Ill. App. 3d at 1073.  We will not disturb the trial court's findings, however, unless they are against the manifest weight of the evidence.  
Estate of Welliver v. Alberts
, 278 Ill. App. 3d 1028, 1036 (1996).

We cannot say that the trial court's ruling was against the manifest weight of the evidence.  Defendants do not dispute that plaintiffs have used the strip continuously for over 20 years.  In 1976, plaintiffs planted trees and in 1978 they built a rock garden on the strip and have maintained the strip continuously since that time.  Plaintiffs' possession of the strip was hostile or adverse, which means the assertion of ownership incompatible with that of the true owner and all others.  
Peters v. Greenmount Cemetery Ass'n
, 259 Ill. App. 3d 566, 569 (1994).  By adding and maintaining landscaping on the strip without the true owners' permission and by using the strip to the exclusion of all others, plaintiffs asserted ownership inconsistent with that of the true owner and all others.  See, 
e.g.
, 
Joiner v. Janssen
, 85 Ill. 2d 74, 79 (1981) (on disputed strip, plaintiffs mowed grass, raked leaves, planted trees, bushes and flowers, buried pet dog, and shoveled walk).  "In essence, plaintiffs used the property as their own, thus satisfying the hostility requirement for adverse possession."  
Peters
, 259 Ill. App. 3d at 570.

We note that plaintiffs' mistaken belief that they owned the property up to the original stake line does not defeat the element of hostility.  
Sparling v. Fon du Lac Township
, 319 Ill. App. 3d 560, 563 (2001).  Instead, occupancy to a visible and ascertained boundary is the controlling feature for determining hostility.  
Joiner
, 85 Ill. 2d at 83. 

Defendants argue that plaintiffs' use of the strip was merely permissive.  They rely on the rule that the use of vacant and unenclosed land is presumed to be permissive and not adverse.  
Dobrinski v. Waddell
, 233 Ill. App. 3d 443, 447 (1992).  The presumption does not apply here because there was no evidence that either property was vacant during the relevant period.  See 
Sierens v. Frankenreider
, 259 Ill. App. 3d 293, 298 (1994).  The strip sits between two occupied parcels, and for part of the relevant period, there were fences running along sections of the purported boundary.  In the cases defendants cite, the properties were described as uncultivated land (
Morris v. Humprey
, 146 Ill. App. 3d 612, 614 (1986)) and a vacant lot adjacent to the claimant's property (
Mann v. La Salle National Bank
, 205 Ill. App. 3d 304, 309 (1990)).  See also 
Dobrinski
, 233 Ill. App. 3d at 448 (vacant lot).

Moreover, a review of the decisions defendants cite demonstrates why plaintiffs' use of the strip was not merely permissive.  In 
Nitterauer v. Pulley
, 401 Ill. 494 (1948), a previous owner of a parcel designated as lot 12 constructed, either in 1923 or 1925, a drainage ditch along the boundary of his property.  Different owners of lot 12 and the adjoining lot 13 testified that they believed the ditch marked the boundary and, accordingly, mowed their lawns up to the ditch.  In 1943, the owners of lot 13 constructed an addition to their garage.  The addition extended the garage to the drainage ditch.  Surveys revealed that the addition extended three feet beyond the actual boundary.

In holding that the owners of lot 13 failed to establish ownership by adverse possession, the court explained:

"None of the witnesses who had owned lot 13 *** testified that he claimed or possessed the strip.  They said only that they considered the ditch to be the line.  This constituted but a thought in the mind of each such owner which he did not express or divulge to others.  Under such circumstances, we must hold that the mowing of the grass on the strip was but an act coinciding with such thought, and not such an act of adverse possession as could ripen into a prescriptive right.  Such use was at most only permissive and any acquiescence by the owners of lot 12 in such grass mowing could not assist in establishing a prescriptive right."  
Nitterauer
, 401 Ill. at 503.

Here, plaintiffs' acts went beyond merely mowing the grass and clearly revealed their intent to claim the strip.  Also, 
Mann
 and 
Morris
 are distinguishable because they were not mistaken boundary cases.  The claimants in those cases used land they knew or should have known did not belong to them.  In 
Morris
, the court concluded that the claimants' belief that they owned the property was not sufficient to overcome the presumption of permissive use.  The court explained that "[c]ontrary to their professed state of mind, [the claimants'] behavior strikes us to be that of people who suspected that they were in the wrong and wanted to keep quiet so they could continue to farm the disputed land."  
Morris
, 146 Ill. App. 3d at 617.  Here, plaintiffs acted in accordance with their belief that they owned the property up to the original stakes.  They made semipermanent landscaping changes that were inconsistent with mere permissive use.  Thus, defendants and their predecessor in interest were sufficiently placed on notice of plaintiffs' claim to the strip.

Defendants argue that plaintiffs failed to prove that their possession of the strip was open and notorious.  Defendants stress that no one from the community testified that they were aware that plaintiffs claimed title to the strip.  Such evidence is not necessary, however.  As defendants recognize, the test for open and notorious possession is whether the community is 
or could be apprised
 of the claimant's possession and exclusive use and enjoyment.  
Beverly Trust Co. v. Dekowski
, 216 Ill. App. 3d 732, 739 (1991).  Here, contrary to defendants' assertion, the boundary line plaintiffs claim marks a stark visible contrast in the character of the properties.  Plaintiffs' property is residential, and defendants' property is farmland.  The tree line lies in the middle of the strip, and plaintiffs' lawn continues at least up to the stake line, where it is met by a plowed field.  Anyone passing by on Woolley Road most likely would assume that the landscaped strip east of the stake line is a part of plaintiffs' residential property.

The evidence established a claim of title inconsistent with that of the true owner.  Plaintiffs made changes to the strip that were plainly inconsistent with their neighbors' use of their property.  Defendants argue that plaintiffs' request for a quitclaim deed is inconsistent with their adverse possession claim.  See 
Mann
, 205 Ill. App. 3d at 309.  Plaintiffs made the request after defendants took actions indicating their intent to assert ownership of the disputed strip.  These events occurred well after the 20-year period was completed, however.  Once the statutory period has run, the record owner is divested of title.  
Brinner v. Huckaba
, 957 S.W.2d 491, 495 (Mo. App. 1997).  The holder by adverse possession obtains title which can be divested only by the conveyance of the land to another or by a subsequent disseisin for the statutory period.  
Applebey v. Lenschow
, 144 Ill. App. 3d 208, 213 (1986).  Moreover, the requisite period of adverse possession need not occur immediately before the claimant files suit.  
Harwick v. Black
, 217 Wis. 2d 691, 699, 580 N.W.2d 354, 358 (App. 1998).  Accordingly, the events upon which defendants rely are irrelevant.  
Bakutis v. Schramm
, 114 Ill. App. 3d 237, 239 (1983).

Defendants argue that plaintiffs failed to prove the boundary of the tract they claim by adverse possession.  Because the possession must be of a defined tract, plaintiffs had the burden of establishing by clear and convincing evidence the location of the boundary.  
Stankewitz v. Boho
, 287 Ill. App. 3d 515, 518 (1997).  The original stakes were in place since plaintiffs purchased the property and clearly marked the boundary of the disputed tract.

The cases defendants cite involved boundary lines that were difficult to ascertain.  
Stankewitz
, 287 Ill. App. 3d at 518 (fences had been placed in different locations and were eventually removed; no one testified about precise location of boundary); 
Estate of Welliver
, 278 Ill. App. 3d at 1040 (no visible markers, and testimony about location of boundary varied greatly).  A clearly visible boundary marker can be adequate, however.  
Joiner
, 85 Ill. 2d at 79 (tree and bush line formed a "definitely ascertainable boundary"); 
Peters
, 259 Ill. App. 3d at 570 (fence); 
Wanless v. Wraight
, 202 Ill. App. 3d 750, 754 (1990) (fence); 
Bakutis
, 114 Ill. App. 3d at 241-42 (two markers showing former location of fence).

Finally, defendants argue that 
Joiner
 is distinguishable.  We disagree.  They stress that in 
Joiner
 the claimants did not recognize the owners' superior title by attempting to obtain title from them.  As we concluded above, plaintiffs' attempt to obtain a quitclaim deed from defendants is irrelevant.  Also, defendants highlight the evidence in 
Joiner
 that the claimants gave away trees, bushes, and flowers grown on the disputed strip.  They assert that the evidence here did not similarly establish open and notorious possession sufficient to apprise the community of plaintiffs' claim.  Again, we have already disposed of this contention.  There is nothing in 
Joiner
 indicating that the court considered dispositive the fact that the claimants gave away plants from the disputed strip.  Like the plaintiffs in 
Joiner
, plaintiffs here added landscaping on the disputed strip and maintained it continuously during the statutory period.

Because we agree with plaintiffs that the trial court's ruling was not against the manifest weight of the evidence, we need not address their alternative argument that the DeGraff survey was correct.

 The judgment of the circuit court of Kendall County is affirmed.

Affirmed.

HUTCHINSON, P.J., and BYRNE, J., concur.