Farmers Grain and Supply Company of Warsaw, Appellee, v. Toledo, Peoria and Western Railroad, Appellant.

Gen. No. 9,306.

Heard in this court at the May term, 1942. Opinion filed May 20, 1942. Opinion modified and rehearing denied October 6, 1942.

John M. Elliott, of Peoria, and John W. Williams, of Carthage, for appellant.

Leon Lamet, of Warsaw, and Robert N. Burchmore, of Chicago, for appellee.

Mr. Justice Riess delivered the opinion of the court.

Defendant has appealed from a decree of the circuit court of Hancock county enjoining interference with the construction and maintenance of an overhead conveyor extending from the mill elevator of plaintiff, Farmers Grain and Supply Company of Warsaw, above and across the 100 foot right of way of defendant's railroad at a point on the banks of the Mississippi River, to be used in loading wheat or other products of plaintiff company on the barges for transshipment on the Mississippi River.

The cause was referred to the master in chancery of said county and heard upon the amended complaint and answer thereto, and objections to the findings and recommendations of said master were heard and overruled and stood as exceptions, which were overruled by the trial court. Relief was granted as prayed in the complaint and recommended by the master, and a decree was entered in favor of the plaintiff, from which defendant has appealed.

Prior to the present suit, defendant herein had procured a decree of said court dated September 14, 1939, in another suit enjoining plaintiff from building a steel overhead bridge supported by a skeleton steel tower with its foundation of concrete piers and supports located within and constructed upon a part of said right of way. The former case was tried by the same chancellor who entered the decree herein. The former proposed structure was to be built to a height of approximately 17 feet, being below the minimum height of 21½ feet required by rules of the Illinois Commerce Com-

mission for structures passing over railroad tracks and rights of way.

The modified structure was to extend from the outer wall of the elevator building across the right of way at a minimum height of 25 feet with no supports based on the 100 foot right of way. The supporting structure was based upon a 20 foot strip lying between the railroad right of way and the high water line on the bank of the Mississippi River.

The elevator plant owned in fee simple by the plaintiff and the defendant company's right of way (acquired under an easement granted to its predecessor in 1865) were both located within the Village of Warsaw on a certain addition thereof which had been divided into blocks, lots, streets and alleys shown upon plats in evidence. There was also located on defendant's right of way a depot shown on plats and photographs in evidence, which was constructed of a converted boxcar and used for freight and passenger service.

Among the findings of fact and conclusions of the master in chancery in the present suit which were approved by the court below are the following: "That the plaintiff has recently constructed a structure over and above the strip of ground which lies West of the west line of the property over which the defendant has an easement of a right-of-way; that said structure is supported on its west side by a steel tower which has its foundations in the bed of the Mississippi River and which is not upon the right-of-way of the defendant, and which said structure when completed will be supported at the Eastern end thereof by the same being attached to the plaintiff's elevator building and that at different times during the construction of said structure, a rope and a wire have been attached to the plaintiff's elevator building which extended across the defendant's right-of-way and were used or intended to be used to aid in the construction of said structure;

that said wire or rope when so attached did not encroach upon or over the right-of-way of the defendant in such manner as to create a hazard and danger to the employees of the defendant in the operation of its cars and trains over and upon its railroad tracks located on said right-of-way; that the height of the rope and wire above defendant's tracks was sufficient to safely permit the operation of trains or cars over and upon defendant's tracks, and that the height of the same was in accordance with the minimum requirements under the rules and regulations of the Illinois Commerce Commission of the State of Illinois, and that the defendant caused said rope and wire to be cut down and removed. That such part of said structure as has been completed is well and safely constructed of steel and that according to the plans and specifications for the building the remainder thereof will be so constructed, and that at no point will any part of said structure be less than 25 feet above the top of defendant's rails. That said structure when erected and completed in the manner proposed will give adequate and sufficient clearance for the safe operation of the trains of the defendant and that the employees of the defendant will not be rendered unsafe thereby, and that said structure will not in any way enter upon, obstruct or interfere with the defendant's right-of-way, the operation of defendant's trains or the lawful conduct of defendant's business. That said rope, so cut, was approximately 30 feet, and said wire, so cut, approximately 60 feet above defendant's tracks and would not have interfered with passage of the trains thereon nor endangered the life and limb of its employees.''

The numerous photographs and plats in evidence clearly portray the framework, construction and location of the steel overpass, elevator, poles, tracks and the entire river front in question.

The railroad company, through its agents and employees, had cut the above rope and cable and the upper edge of the tower which extended over and above the west line of the right of way, claiming right to do so under the prior decree of the circuit court and that their easement extended upward beyond the height of the proposed conveyor which interfered with the use and enjoyment of its right of way for railroad purposes.

Plaintiff contended that the defendant appellant's right of way extended only to a height that was necessary for the operation of trains and the railway in the ordinary manner and the construction and use of structures necessarily or reasonably incident thereto and did not extend to the height of the proposed conveyor, which latter height was contended to be above and beyond the easement and right of way of the railroad company and that the right beyond such height inhered only in an owner in fee simple and not in the owner of a mere easement for railway purposes and further contended from the evidence that highway bridges and telephone lines were generally constructed above said railroad right of way along defendant's line and that the plaintiff herein, in so constructing the conveyor above the proposed height of 25 feet, was in no way trespassing upon defendant's rights or interfering with its legitimate use and enjoyment of the right of way under its easement for railway purposes.

After cutting the cables, the railroad company immediately placed two telephone poles shown on photographs along the west edge of its right of way and immediately opposite the tower of the proposed conveyor and placed at the top thereof a sign reading: "T P & W R R WARSAW STATION," which faced the elevator and could only be seen diagonally from a street beyond, thereby blocking off and preventing

construction of the overpass by the plaintiff company. The evidence showed that during the long previous operation and maintenance of the railroad station, no sign had ever been placed or maintained thereon by the company, and plaintiff contended that the same was placed at its present height and location solely for the purpose of obstructing and preventing the plaintiff's lawful use of a conveyor above the right of way easement and was not a lawful or legitimate use of the right of way or within the height to be lawfully or reasonably constructed for railway purposes.

The railroad company further contended that the boom of a certain crane kept by the company for use in case of wrecks or similar emergencies extended to a height of approximately 40 feet and that therefore the same could not pass under the proposed conveyor without being loosened at the base and laid down and placed upon the railroad car, which method was used when passing under bridges, wires or other overhead obstructions. Plaintiff also contended that the railroad right of way ended at the northerly side of its property; that no such boom was needed or could be used at said point in the operation of its railway by defendant company and that such proposed conveyor interfered in no way with such use or any other lawful and legitimate use of the space above the right of way at the point indicated, and the trial court, by its decree, so found.

Without discussing in detail the evidence in relation thereto, the lower court, in its decree, also found and we hold that it appears from the record that the lots upon which the elevator was located were owned in fee simple by the plaintiff; that the title in fee to the 100 foot right of way strip of the defendant was neither owned by the plaintiff nor the defendant, but that the defendant possessed an easement for railway purposes in said right of way; that neither the plaintiff nor the defendant owned in fee simple the

adjoining 20 foot strip of ground along the river bank upon which the supporting tower of plaintiff's conveyor was located, but that the plaintiff is in possession thereof and has erected a permanent improvement thereon and that the defendant has no easement nor interest in said 20 foot strip, in fee, possession or otherwise and cannot, therefore, lawfully object to the placing of plaintiff's tower thereon.

An easement for right of way purposes acquired by a railroad company is in some respects different from other easements in its essential purposes, uses and necessities. The use to which an easement is devoted or for which it is granted determines its character and to the extent for which it is necessary to carry out the purpose of the grant, the rights of the owner of the easement are paramount.

The generally accepted rule of law seems to be that applied by and recognized in the able opinion filed by the chancellor below. While such easement is not limited to the bare surface of the land, it does have certain limitations as to height and depth within which the railroad company must remain. The ownership of such an easement extends only to such height and depth as reasonably permits the full and free enjoyment of the surface for railroad purposes. In 51 C. J. 530, par. 193, the rule is aptly stated as follows: "The property rights of a railroad company, under an easement, in its right of way, extend upward for a space necessary for the use of its franchise and downward to a line of support for its tracks and superstructures. But if the company acquires a fee simple title, its absolute ownership will extend indefinitely upward so as to include proprietorship of the air and space above the land."

It may be noted here that we find no force in defendant's contention that it held an interest in the fee by virtue of a certain master's deed and tax payments. From the record it appears that the master's deed

was given in a mortgage foreclosure proceeding affecting railroad property located on its easement and right of way and did not constitute a purported conveyance of the fee simple title to the right of way, nor did the occupancy and payment of current taxes by the appellant on its property located on such right of way under its easement evidence ownership of the fee title or a color of title to the freehold.

The space or distance upward or downward which is necessary for the full free use of its franchise is a question of fact to be determined from the circumstances of each case. *Citizens' Tel. Co. v. Cincinnati, N. O. & T. P. R. Co.,* 192 Ky. 399, 233 S. W. 901, 18 A. L. R. 615.

An easement for a railroad right of way extends to a height sufficient for the safe and convenient passage of all trains and their burdens of whatever nature. *Citizens' Tel. Co. v. Cincinnati, N. O. & T. P. R. Co., supra.*

It has been held in several cases that the railway company not owning the fee may not restrain the stringing of wires above and across its right of way at a proper height and properly supported. *Citizens' Tel. Co. v. Cincinnati, N. O. & T. P. R. Co., supra; Illinois Cent. R. Co. v. Centerville Tel. Co.,* 135 Tenn. 198, 186 S. W. 90.

In the Kentucky case, *supra,* the railroad company owned an easement for right of way purposes and sought to prevent the maintenance of private telephone wires (not a main trunk line) across its right of way. The comment of the court in passing upon that question is applicable in principle to the facts herein. "To what height an easement extends where there are no dimensions fixed depends upon the facts of each case. For a railroad the height must be sufficient for the safe and convenient passage of all trains and their burden, of whatever nature. . . . So long as the structure above the track does not interfere with the

full enjoyment of the right of way, and is of such permanent and substantial nature as not to be a menace to those who have to pass under it, the owner of the easement has no right to require its removal, nor can such owner maintain an action for such purpose, for its domain has not been invaded, nor has it suffered a wrong, although the fee owner may maintain such an action.'' To the same effect is *Illinois Cent. R. Co. v. Centerville Tel. Co., supra.* Fanciful or speculative invasion of easements need not be considered.

In *Citizens' Tel. Co. v. Cincinnati, N. O. & T. P. R. Co., supra,* it is further said: ''But if the railroad company owns merely the easement or right of use of the land on which its road is constructed, it cannot complain that another, even a stranger, as is the telephone company in this case, has entered over the easement at an elevation so high as to give no obstruction to the full enjoyment of the easement for the purposes for which it was granted, and there maintains a wire or wires in connection with its telephone business. . . . The ownership of an easement extends only to such height as reasonably to permit the full and free enjoyment thereof for the purpose for which it was granted or acquired, and no further. The easement holder would be as much a trespasser if he ascended and occupied the realm above the right of way for some purpose not contemplated by the grant as would be a stranger.''

While no case involving similar facts in Illinois courts of review has been cited, the general rule has been recognized that a grant of an easement of a right of way does not, by implication, include the right to have that way kept open to the sky for light and air, and that the grant is not interfered with by building over the way, provided there is no interference with the reasonable use of the easement as a passageway. *Gulick v. Hamilton,* 293 Ill. 126, 127 N. E. 383, 9 A. L. R. 1629, 17 Am. Jur. 1009, par. 117.

Aside from the generally recognized rule that the owner of the fee may construct improvements above the right of way that will not interfere with the enjoyment of the easement, a railroad company cannot complain or interfere with the construction of an improvement by a stranger, since the same is above and beyond the use and purpose of the easement granted, and the railroad company therefore holds no legal right or interest therein.

To meet the effect of this recognized rule of law, the defendant company contends that the erection and maintenance of the proposed overhead conveyor will in fact interfere with the reasonable and proper use of its right of way, and in support of this contention refers to the evidence concerning certain pile driver equipment in use by the company. As we have noted, the evidence shows that the right of way ends at or a short distance beyond Main street adjoining the plaintiff's property in question, beyond which short distance said equipment could not operate. It further appears that the same, in its usual and ordinary use and operation, passes beneath highways and other bridges and obstructions of a permanent nature referred to in the evidence, by lowering or loosening the boom to the surface of the car in clearing such structures erected or complying with the rules of the Illinois Commerce Commission fixing a minimum clearance of 21½ feet above the track. While such rules are not controlling here, they are indicative of what is ordinarily considered a safe clearance for trains operating on railroad rights of way. In view of the usual and ordinary use of this equipment, which, from the facts appearing herein would not interfere with or prevent its use by the defendant company as a result of the construction and maintenance of the overhead conveyor by the plaintiff, we hold with the trial court that the same constitutes no interference with the lawful use and enjoyment of defendant's right of way for

railroad purposes. Aside from such evidence, defendant offers no testimony of possible interference with the operation of its railroad and train service.

Concerning the placing and elevating of poles by defendant with an attached sign at a height far above and beyond the ordinary use of the right of way by the company at a point on the western edge thereof immediately opposite plaintiff's tower and thereby preventing the possible use of such domain, after first cutting away the cable, rope and upper edge of the tower, the trial court properly concluded that the same was not shown to be for the purpose of facilitating in any way the reasonable, necessary or proper transaction of the ordinary business and operation of the railway or within the area of its easement under the facts and circumstances in evidence, but was a deliberate act through its agents and employees calculated to destroy and prevent the construction and maintenance of the overpass at a point above and beyond the domain of the easement in question; that, therefore, only the owner of the fee could have objected to such structure and that the trial court properly found under the facts and circumstances in evidence that the defendant had no interest therein or legal right to interfere therewith.

The trial court further found that the plaintiff, through such deliberate action of the defendant, had sustained damages in the sum of one hundred dollars, decreed the equities of the cause to be with the plaintiff and directed that said sign be either lowered or removed so as not to interfere with or prevent the completion of the overhead conveyor of the plaintiff so being constructed above and not within the domain of proper use and enjoyment of defendant's easement.

We need not here specifically discuss nor pass upon the earnest contention of appellee that appellant primarily seeks by inequitable and dilatory action to delay and prevent shipment of any grain on river barges to meet the competition of other shippers using such

facilities and thus compel appellee to ship all of its products at higher rates by rail, resulting in great private loss and hardship.

Railroad companies may and frequently do erect and maintain suitable and necessary structures and improvements on their rights of way of considerable height under varying circumstances, in order to properly conduct and facilitate the necessary and vitally important service rendered by them as public carriers of persons and property. While such structures are usually located on lands or premises owned by them in fee simple, the same may be located upon rights of way procured by lease, condemnation proceedings or otherwise to be used for railway purposes. Although the surface dimensions of the latter are usually fixed and determined in the lease or grant, the height to which such easement may extend is not usually so fixed nor designated, and the easement extends only to such height as is reasonably necessary to permit its full, free and lawful use and enjoyment for the purpose for which the easement or grant was acquired, and no further, dependent upon and to be determined, in case of controversy, by the particular facts, circumstances and conditions prevailing in each case. Courts of equity will not abridge, impair nor interfere with the use and enjoyment of an easement within the lawful scope, domain and purpose of the grant. If, however, the holder of such easement arbitrarily invades and seeks to occupy the domain above or beyond the scope and purpose of the easement and right of way granted, he becomes as much a trespasser as would be any stranger. Such trespass may be against the rights of the owner of the fee or of a mere possessor, even though the latter be a trespasser as against the interests of the fee owner who is not a party to the proceedings and whose rights and interests are not in controversy. If such invasion occur against the party in actual possession of the specific area thus trespassed

upon, the injured party may properly invoke the aid of a court of equity and seek such relief against the continued trespass or invasion of such possession as the particular facts and circumstances of the case may warrant. Under the facts and circumstances disclosed by the evidence herein, we deem the findings and decree of the chancellor who heard and determined the cause to be in accord with both the law and the evidence.

Defendant further contends that aside from the question of whether or not the building of said conveyor at its present and proposed height is at a sufficient height as not to interfere with the exercise of its easement, such question has become *res judicata* by reason of the former decree of the chancellor hereinabove referred to and further contends that whether or not the same was so adjudicated, it might have been adjudicated as an issue in said cause and that the plaintiff therefore is precluded from raising such question herein under the authority of *Skolnik v. Petella*, 376 Ill. 500, 34 N. E. (2d) 825. However, it will clearly appear from a reading of the former decree, which was in evidence, and the ruling of the trial court thereon in the instant case that the same properly enjoined the plaintiff from placing the concrete foundations and supports upon the right of way and constructing the same upon and within the area of said right of way and did not purport to decide the height thereof or pass upon the right of the plaintiff to build such conveyor at a point above and beyond the use of said right of way easement for railroad purposes, which was not in issue nor determined by the court in that case. The facts in the above cited case are not applicable herein.

In *Cherry v. Aetna Casualty & Surety Co.*, 300 Ill. App. 392, 21 N. E. (2d) 4 (aff'd 372 Ill. 534, 25 N. E. (2d) 11), a similar contention was made by appellants based upon the same theory now advanced by the defendant in this case. The court in that case acknowl-

edged the principle relied upon, but held that it did not apply in that case, saying, at page 403: "Before a fact or question in some former suit can be claimed to be res adjudicata in a subsequent suit, as estoppel by verdict, certain requirements must be shown to exist. When the second suit is on a different cause of action, claim or demand, the judgment in the first suit is an estoppel only as to the point or question there actually litigated and determined, and not as to other matters which might have been litigated and determined. The burden of proof is on him who invokes the estoppel. *Harding Co. v. Harding,* 352 Ill. 417. We are in accord with the holding of the Trial Court that res adjudicata is not a proper defense in this case." We find that the trial court did not err in holding that the decree in the former case was not *res adjudicata.*

We have further carefully examined and considered all other assignments of error and we hold that the same are without merit. The decree of the circuit court of Hancock county will therefore be affirmed.

*Decree affirmed.*