# Illinois Official Reports

## Appellate Court

---

**Brandhorst v. Johnson, 2014 IL App (4th) 130923**

---

| | |
|---|---|
| Appellate Court Caption | LAWERANCE R. BRANDHORST, Plaintiff-Appellee, v. GEORGE R. JOHNSON, CYNTHIA J. JOHNSON, and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-13-0923 |
| Filed | June 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over a strip of land between plaintiff's residence and his neighbor to the south in a subdivision where the original plat designated the strip as "Future Roadway–Not Dedicated," the trial court properly granted plaintiff ownership by adverse possession of a strip of land 7.5 feet wide on the south side of his lot and a prescriptive easement over the roadway on the strip, including the portion of the strip beyond plaintiff's driveway coming off the strip, and although the trial court properly denied plaintiff any injunctive relief with regard to defendants' diversion of surface water as a result of their modifications of the roadway on the strip, the trial court properly ordered defendants to restore the asphalt roadway, since the trial court's findings that plaintiff established his rights to adverse possession, a prescriptive easement, and the restoration of the asphalt roadway were not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 10-CH-23; the Hon. Robert K. Adrian, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Saleem B. Mamdani (argued) and Amy C. Lannerd, both of Lewis, Longlett & Lannerd, LLC, of Quincy, for appellants.

Gerald L. Timmerwilke (argued), of Blickhan, Timmerwilke, Woodworth & Larson, of Quincy, for appellee.

Panel    JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Pope and Holder White concurred in the judgment and opinion.

## OPINION

¶ 1    In November 2011, plaintiff, Lawerance Brandhorst, filed a third amended complaint against defendants, George and Cynthia Johnson, alleging that he (1) acquired ownership of a strip of defendants' land pursuant to the doctrine of adverse possession, (2) acquired a prescriptive easement over portions of a private roadway owned by defendants, and (3) was entitled to an injunction enjoining defendants from wrongfully diverting surface water onto his property.

¶ 2    In September 2013, following a bench trial that took place over six days between January and May 2013, the trial court entered a written order that (1) granted plaintiff ownership over the disputed strip of land, (2) granted plaintiff a prescriptive easement over portions of the roadway owned by defendants, and (3) denied plaintiff's request for injunctive relief relating to defendants' diversion of surface water. As part of the relief granted, the court ordered defendants to restore a portion of the roadway to the condition it was in prior to April 2009, when the defendants made significant modifications to the roadway that affected plaintiff and his property.

¶ 3    Defendants appeal, arguing that (1) plaintiff failed to prove his ownership of the disputed strip of land by adverse possession, (2) plaintiff failed to prove that he acquired a prescriptive easement over portions of the roadway, and (3) even if plaintiff did prove his rights to ownership by adverse possession and a prescriptive easement, the trial court's remedies went beyond the scope of the proof. We disagree and affirm.

¶ 4                               I. BACKGROUND

¶ 5    The following background was gleaned from evidence presented at trial. Because the legal issues presented in this appeal require several distinct inquiries into historical facts, we review much of the evidence presented at trial in our analysis section.

¶ 6                                         A. The Ridgewood Properties

¶ 7        The rough diagram appearing below, which was prepared by this court and is not to scale, is intended only to assist in an understanding of the facts. It depicts the properties at issue as they existed prior to April 2009.



¶ 8        In the 1950s, Arthur Stipp, the father of defendant Cynthia Johnson, developed a small residential subdivision along the east side of Ridgewood Drive in Quincy, Illinois. At issue in this case are two lots in that subdivision: 821 Ridgewood Drive and 815 Ridgewood Drive.

¶ 9        Defendants own 821 Ridgewood Drive, a narrow, rectangular strip running 237 feet east to west and 50 feet north to south, which the original plat mat designated "Future Roadway–Not Dedicated." The western boundary of 821 Ridgewood Drive lies along Ridgewood Drive, a city street that runs north and south. The entire eastern boundary of 821 Ridgewood Drive borders 825 Ridgewood Drive, a residential lot where defendants live. The dimensions of 825 Ridgewood Drive are not relevant to this appeal. A private roadway runs the length of 821 Ridgewood Drive, connecting Ridgewood Drive to a circle driveway in front of defendants' residence on 825 Ridgewood Drive. Plaintiff and defendants–as well as their predecessors in title–have always used the private roadway on 821 Ridgewood Drive for ingress and egress to their properties. No other structures or improvements exist on 821 Ridgewood Drive.

¶ 10        Plaintiff owns 815 Ridgewood Drive, a rectangular lot that lies immediately north of 821 Ridgewood Drive and immediately east of Ridgewood Drive. The western boundary of 815 Ridgewood Drive runs 116 feet along Ridgewood Drive. The southern boundary of 815 Ridgewood Drive runs 101 feet along the northern boundary of 821 Ridgewood Drive. The remaining northern boundary of 821 Ridgewood Drive–the portion east of plaintiff's property–borders the backyards of properties in another subdivision, which are not at issue in this appeal. At issue in this appeal is the portion of 821 Ridgewood Drive directly south of 815 Ridgewood Drive.

¶ 11                                                B. The Private Roadway Over 821 Ridgewood Drive

¶ 12        When Stipp first developed the subdivision, he built the beginnings of a 35-foot-wide, east-west running, asphalt road on 821 Ridgewood Drive. The asphalt road was apparently never fully completed, however, and it extended eastward only about 101 feet, to a point roughly as far east as the eastern boundary of 815 Ridgewood Drive. From that point eastward, a much narrower gravel road provided access from Ridgewood Drive to the residence at 825 Ridgewood Drive.

¶ 13        The asphalt roadway's 35 feet of width included concrete gutters on both sides, each measuring approximately 2.5 feet in width. Traveling from east to west, the gutters ran parallel toward Ridgewood Drive, eventually fanning out, with the southern gutter curving south toward Ridgewood Drive and the northern gutter curving north toward Ridgewood Drive. Because 821 Ridgewood Drive was 50-feet wide, and the asphalt road was only 35 feet wide, no conspicuous monument marked where the northern boundary of 821 Ridgewood Drive met the southern boundary of 815 Ridgewood Drive. Instead, grass extended from the lawn of 815 Ridgewood Drive–plaintiff's property–all the way south to the gutters of the asphalt road on 821 Ridgewood Drive. This created the appearance that the southern boundary of 815 Ridgewood Drive was at the gutter of the asphalt road.

¶ 14        Although the gutter was actually 7.5 feet south of the boundary line of 815 Ridgewood Drive, plaintiff and his predecessors in title used and maintained the land all the way south to the gutter as their own. Each of them thought that the roadway was city property. Plaintiff's adverse possession claim concerns the 7.5 feet of 821 Ridgewood Drive north of the gutter and south of his property line. Plaintiff's prescriptive easement claim concerns his right to use the roadway portion of 821 Ridgewood Drive south of his property.

¶ 15                                       C. Pertinent Ownership History of the Properties

¶ 16                                         1. *815 Ridgewood Drive*

¶ 17        In July 1986, Joseph and Anneliese Arnoldi deeded 815 Ridgewood Drive to Terry and Gina Miller. In July 1994, the Millers deeded 815 Ridgewood Drive to Deborah Holman (then Deborah McCormick). In July 1997, Holman deeded 815 Ridgewood Drive to plaintiff, who owned and lived at the property thereafter.

¶ 18                                         2. *821 Ridgewood Drive*

¶ 19        Arthur Stipp and his wife, Doris, owned 821 Ridgewood Drive until May 2007, when Doris, then Arthur's widow, deeded 821 Ridgewood Drive to defendants.

¶ 20                                         3. *825 Ridgewood Drive*

¶ 21        Although 825 Ridgewood Drive is not at issue in this appeal, we briefly review the ownership history of that property to provide context for the parties' present dispute. The Stipps lived at 825 Ridgewood Drive until some time prior to 1979. (Although the record contains no direct evidence of when the Stipps moved out of 825 Ridgewood Drive, plaintiff introduced a 1979 document in which the Stipps granted Raymond and Lorraine Kibitlewski a perpetual right-of-way over 821 Ridgewood Drive for ingress and egress to the Kibitlewskis' property on 825 Ridgewood Drive. The record is not clear whether someone else owned 825 Ridgewood Drive between the Stipps and the Kibitlewskis.)

¶ 22    At some point between 1979 and 2006, Bernard Goggins purchased 825 Ridgewood Drive. In August 2006, defendants purchased 825 Ridgewood Drive through a sheriff's deed pursuant to a foreclosure sale after Goggins defaulted on his mortgage payments. (825 Ridgewood Drive was Cynthia's childhood home, where she lived with her parents, Arthur and Doris Stipp, until she married defendant George Johnson in 1970.) Defendants renovated the residence at 825 Ridgewood for over a year, and moved in sometime around August 2007 or later. Defendants concede that they purchased both 821 and 825 Ridgewood Drive after the alleged 20-year statutory adverse possession period (July 1986 to July 2006) had already elapsed.

¶ 23                              *4. 831 Ridgewood Drive*

¶ 24    Although 831 Ridgewood Drive is also not at issue in this appeal, we note that its original occupant, a man by the name of Zang, codeveloped the subdivision along with Stipp. Zang and the subsequent owners of 831 Ridgewood Drive used the roadway on 821 Ridgewood Drive for ingress and egress during the 20-year statutory period.

¶ 25               D. Defendants' 2009 Modifications to 821 Ridgewood Drive

¶ 26    In April 2009, defendants hired contractors to remove the asphalt road on 821 Ridgewood Drive, including the gutters, and replace it with a narrower gravel road, approximately 15 feet wide, which matched the existing gravel road providing access to 825 Ridgewood Drive. Plaintiff was displeased with these modifications for a host of reasons, including the effect that the modifications had on (1) flooding in the south-east corner of his property, (2) gravel runoff onto his property, which exacerbated the flooding problem, (3) his ability to back out of his driveway, and (4) the aesthetic qualities of his yard.

¶ 27                          E. Plaintiff's Complaint

¶ 28    In November 2011, plaintiff filed his third amended complaint, alleging–as relevant to this appeal–that (1) he acquired through adverse possession a 10-foot strip of 821 Ridgewood Drive immediately south of his property line (during trial, the trial court granted plaintiff's motion to amend the pleadings pursuant to section 2-616 of the Code of Civil Procedure (735 ILCS 5/2-616(c) (West 2012)) to claim only a 7.5-foot strip of 821 Ridgewood Drive, which was based on plaintiff's realization that his original 10-foot measurement included the 2.5-foot gutter), and (2) he acquired a prescriptive easement over the portion of the roadway south of his property for purposes of ingress and egress, parking, and general use and enjoyment. Plaintiff alleged that the relevant 20-year statutory adverse possession period (735 ILCS 5/13-101 (West 2010)) ran from July 11, 1986, to July 11, 2006–a period ending before defendants purchased 821 Ridgewood Drive or removed the asphalt roadway.

¶ 29                                  F. Trial

¶ 30    A bench trial on plaintiff's third amended complaint took place over six days between January and May 2013. (Much of the evidence presented concerned the third count of plaintiff's complaint, which alleged that defendants tortiously diverted surface water onto plaintiff's property. The trial court denied that count, and it is not at issue in this appeal.)

¶ 31    As to plaintiff's adverse possession and prescriptive easement claims, the trial court found that plaintiff proved (1) his ownership over the northern 7.5-foot strip of 821 Ridgewood Drive by adverse possession, and (2) his right to a prescriptive easement over the roadway south of his property. As part of the relief granted on plaintiff's prescriptive easement claim, the court ordered defendants to restore the roadway south of plaintiff's property to the condition it was in prior to April 2009, including installation of a new gutter and removal of all gravel.

¶ 32    This appeal followed.

¶ 33                                    II. ANALYSIS

¶ 34    Defendants argue that (1) plaintiff failed to prove his ownership of the disputed strip of land by adverse possession, (2) plaintiff failed to prove that he acquired a prescriptive easement over portions of the roadway, and (3) even if plaintiff did prove his rights to ownership by adverse possession and a prescriptive easement, the trial court's remedies went beyond the scope of the proof. We address defendants' contentions in turn.

¶ 35                   A. The Trial Court's Adverse Possession Finding
¶ 36                     1. *Burden of Proof and Standard of Review*

¶ 37    To establish title by adverse possession, the claimant must prove possession of the property for the entire 20-year statutory period (735 ILCS 5/13-101 (West 2010)), "and that possession must have been '(1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under claim of title inconsistent with that of the true owner.' " *Davidson v. Perry*, 386 Ill. App. 3d 821, 824-25, 898 N.E.2d 785, 788 (2008) (quoting *Gacki v. Bartels*, 369 Ill. App. 3d 284, 292, 859 N.E.2d 1178, 1186 (2006)). Further, although not one of the five elements of possession, the claimant must also prove "by clear and convincing evidence the exact location of the boundary line to which they claim[ ]." *Schwartz v. Piper*, 4 Ill. 2d 488, 494, 122 N.E.2d 535, 539 (1954).

¶ 38    In adverse possession cases, "[a]ll presumptions are in favor of the title owner, and the party claiming title by adverse possession must prove each element by clear and unequivocal evidence." *Knauf v. Ryan*, 338 Ill. App. 3d 265, 269, 788 N.E.2d 805, 808 (2003). Because the supreme court has not explained the meaning of "clear and unequivocal evidence," courts have applied the clear and convincing burden of proof in adverse possession cases. *Dotson v. Former Shareholders of Abraham Lincoln Land & Cattle Co.*, 332 Ill. App. 3d 846, 855, 773 N.E.2d 792, 800 (2002). We will not disturb the trial court's findings unless they were against the manifest weight. *Knauf*, 338 Ill. App. 3d at 269, 788 N.E.2d at 808. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70, 983 N.E.2d 414.

¶ 39                              2. *Continuous Possession*
¶ 40    Plaintiff presented testimony from (1) Terry Miller, who owned and lived at 815 Ridgewood Drive from July 1986 until July 1994; (2) Deborah Holman, who bought the property from Miller and lived there until July 1997; and (3) himself, who bought the property from Holman and lived there until well after July 2006, when the adverse possession period ended. Plaintiff also presented deeds showing the chain of title during the 20-year period.

Plaintiff and his predecessors in title each testified that they used the portions of 821 Ridgewood Drive at issue in substantially the same way. Defendants presented no evidence that the witnesses' use or possession of the disputed property was interrupted during the 20-year adverse possession period. No one but the owners of 815 Ridgewood Drive, or their families and guests, used or maintained the property at issue. The owners of 821 Ridgewood Drive never attempted to exclude anyone from the property. Accordingly, the trial court's finding that the possession was continuous was not against the manifest weight of the evidence.

¶ 41                                    3. *Hostile Possession*

¶ 42        The "hostility" element of adverse possession "does not imply actual ill will, but only the assertion of ownership incompatible with that of the true owner and all others." *Joiner v. Janssen*, 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174 (1981). "Although evidence of the use and control over land is the typical manner by which any claimant establishes title by adverse possession, it must be clearly shown that the use of the land was adverse and not merely permissive, since permissive use of land, no matter how long, can never ripen into an adverse possessory right." *Mann v. La Salle National Bank*, 205 Ill. App. 3d 304, 309-10, 562 N.E.2d 1033, 1037 (1990).

¶ 43        Miller, Holman, and plaintiff each testified that during their time living at 815 Ridgewood Drive, they treated all the land north of the gutter as their own. They engaged in general yard maintenance, including mowing the grass and weeding. They shoveled snow from the entire driveway down to the gutter. Their children played games and sports on the driveway, the roadway, and the grass. They, their children, and their guests parked their cars on the roadway and on the grass. Miller parked a trailer and a "hunting thing" on the roadway or on the grassy area immediately north of the roadway.

¶ 44        Plaintiff's son, Aaron Brandhorst, testified that when he lived at 815 Ridgewood Drive from 1997 until approximately 2004, he would (1) camp outside on the area of 821 Ridgewood Drive north of the gutter, (2) use an electric edger to edge the grass along the gutter, (3) mow the lawn down to the gutter, (4) shovel snow off the driveway down to the gutter, and (5) generally play on the grassy area of 821 Ridgewood Drive.

¶ 45        No one ever attempted to exclude Miller, Holman, plaintiff, their children, or their guests from the area of 821 Ridgewood Drive north of the gutter. During the adverse possession period, Miller, Holman, and plaintiff all believed that the city owned the asphalt roadway. Miller and Holman believed that 815 Ridgewood Drive extended all the way to the gutter. Plaintiff suspected that the city might own a portion of the grassy area north of the gutter, but that he was obligated to maintain that area.

¶ 46        Defendants argue that because plaintiff thought for a time that the city of Quincy owned the roadway and a portion of the lawn north of the gutter, his possession was not hostile because it was not inconsistent with that of the record owner. This argument would be meritorious only if the city was the record owner. If that were the case, and plaintiff were required under the municipal code to maintain the city property, then it would be true that his possession was not inconsistent with that of the record owner. However, the Stipps–a private party–owned the land at issue. It is inconsistent with a private party's ownership of a piece of land for a non-owner to maintain and assert dominion over the land without any agreement to do so. Plaintiff's belief that his maintenance and control over the property was consistent with the

- 7 -

city's ownership does not matter because the city was not the actual owner. What matters is that plaintiff's actions were incompatible with Stipp's ownership of the land at issue.

¶ 47    The evidence showed that plaintiff's actions with regard to the 7.5-foot strip–just like those of his predecessors in title–were equivalent to a claim of ownership inconsistent with the Stipps' ownership. Plaintiff's knowledge that he did not own the land did not defeat the element of hostility. *Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174 ("To hold that because the possessor knows or should know that record title is in another precludes any possibility of the possessor's title being adverse is the antithesis of the doctrine of adverse possession as it has existed in this State."). Accordingly, the trial court could properly conclude that the owners of 815 Ridgewood Drive asserted ownership over the portions of 821 Ridgewood Drive north of the gutter incompatible with that of the true owners.

¶ 48    Defendants further argue that plaintiff failed to prove that his use of the land at issue was not permissive in nature. Specifically, defendants contend that because Stipp built the residence at 815 Ridgewood Drive with a driveway attached to the private roadway on 821 Ridgewood Drive, he implicitly granted the residents of 815 Ridgewood Drive permission to use 821 Ridgewood Drive. Although the evidence suggests that Stipp may have contemplated the owners of 815 Ridgewood Drive using the roadway for ingress and egress, the question of permissive use is not so simple.

¶ 49    The original plat map designated the lot we have referred to as 821 Ridgewood Drive as "Future Roadway–Not Dedicated." The original plat map also showed that lot extending eastward to the end of the subdivision (at some point in time, the eastern end of 821 Ridgewood Drive merged with 825 Ridgewood Drive). The unfinished asphalt road, the designation of "Future Roadway–Not Dedicated," the open-ended layout of the roadway, and the fact that the driveways of 815 and 831 Ridgewood Drive were built connected to the roadway all indicate that Stipp originally intended the roadway to be dedicated as a public street to provide access to the homes in the subdivision, which may have grown much larger than only three homes. The evidence suggests that Stipp's original plans for the subdivision did not come to fruition. This would explain why 821 Ridgewood Drive exists as a lot containing nothing more than a private roadway, owned by people who apparently gain no benefit from its use by others. The trial court could have reasonably concluded that the owners of 815 Ridgewood Drive began using the roadway simply because it was there, and not because Stipp granted them permission. Indeed, the parties do not dispute that the record contains no evidence that Stipp granted the owners of 815 Ridgewood Drive written or oral permission to use the roadway.

¶ 50    Further, the trial court noted in its written order that Stipp granted the former owners of 825 Ridgewood Drive–the Kibitlewskis–a perpetual right-of-way for ingress and egress. Like 815 Ridgewood Drive, 825 Ridgewood Drive has a driveway attached to the roadway on 821 Ridgewood Drive. The court found that if Stipp intended to permit the owners of 815 Ridgewood Drive to use 821 Ridgewood Drive for ingress and egress, he would have granted them a similar perpetual right-of-way. The fact that Stipp did not shows that plaintiff and his predecessors' use of 821 Ridgewood Drive was not pursuant to Stipp's permission. In fact, plaintiff's evidence showed that Stipp moved out of the subdivision no later than 1979–7 years before the 20-year adverse possession period started. Stipp may not have even been aware that Miller, Holman, or plaintiff was using the roadway.

¶ 51    We also note that plaintiff's adverse possession claim concerned the entire area of 821 Ridgewood Drive north of the gutter, not just the driveway portion. Even if Stipp had implicitly granted the residents of 815 Ridgewood Drive permission to use the driveway portion of 821 Ridgewood Drive, that grant of permission would not extend to the grassy areas to the east and west of the driveway, which made up most of the 7.5-foot strip.

¶ 52    Defendants' permissive use argument rests entirely upon the layout of plaintiff's driveway in relation to the roadway. This is not enough to warrant reversal of the trial court's finding that the use was hostile. The fact that Stipp did not prevent plaintiff or his predecessors in title from using the roadway or driveway portions of 821 Ridgewood Drive does not automatically equate to a grant of permission. If such were the case, a claimant could never establish adverse possession because the true owner's failure to exclude the claimant from the land for the 20-year period would always lead to the conclusion that the use was permissive. In this case, the court reasonably concluded that the owners of 815 Ridgewood Drive did not have permission to use the roadway or driveway portions of 821 Ridgewood Drive. That finding was not against the manifest weight of the evidence.

¶ 53                              4. *Actual Possession*

¶ 54    "The making of improvements or acts of dominion over land, indicating to persons residing in the immediate neighborhood who has exclusive management and control of the land, are sufficient to constitute possession." *Ewald v. Horenberger*, 37 Ill. App. 3d 348, 351, 345 N.E.2d 524, 527 (1976). In this case, plaintiff and his predecessors in title exerted management and control over the 7.5-foot strip just as if they were the true owners. They mowed the lawn, weeded, raked leaves, and shoveled snow, and their children played on the land. Defendants claim that these actions were not enough to demonstrate that the owners of 815 Ridgewood Drive "planted their flag" on the 7.5-foot strip. However, given the characteristics of the land at issue, we fail to see what more was needed to establish actual possession. The law is well settled that adverse claimants need not erect a fence or other structures on the disputed land to prove actual possession. See *Augustus v. Lydig*, 353 Ill. 215, 222, 187 N.E. 278, 281 (1933) ("It is not necessary that land should be [e]nclosed by a fence or that a house should be erected on it to constitute possession, or that it should be reduced to cultivation. Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession."). Plaintiff and his predecessors in title exercised management, maintenance, and control over the 7.5-foot strip during the 20-year adverse possession period. Accordingly, the trial court's finding that plaintiff proved actual possession was not against the manifest weight of the evidence.

¶ 55                      5. *Open, Notorious, and Exclusive Possession*

¶ 56    The adverse claimant's possession of the land at issue must "be of such open and visible character as to apprise the world, that the property has been appropriated, and is occupied." (Internal quotation marks omitted.) *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1038, 663 N.E.2d 1094, 1100 (1996) (quoting *Travers v. McElvain*, 181 Ill. 382, 387, 55 N.E. 135, 136 (1899)). For much of the same reasons that plaintiff and his predecessors' possession was hostile and actual, so too was it open, notorious, and exclusive. During the relevant 20-year statutory period, no one but the owners of 815 Ridgewood Drive maintained or regularly used

the 7.5-foot strip. Yard maintenance, such as mowing, weeding, and raking, is of such an openly visible and notorious character that it sufficiently demonstrates to the neighborhood that the person doing the maintenance has claimed ownership over the land.

¶ 57 Defendants argue that plaintiff failed to prove exclusive possession because neither he nor his predecessors in title ever excluded anyone from the 7.5-foot strip. While defendants acknowledge that they did not present evidence that the Stipps or anyone else ever entered the 7.5-foot strip during the statutory period, they claim that this does not matter because plaintiff carries the burden of proof. We reject defendants' assertion that the element of exclusivity required plaintiff to prove that he excluded people from the 7.5-foot strip during the 20-year statutory period. Instead, "exclusivity requires that the claimant possess the property independent of a like right in others, [and that] the opponent, the alleged rightful owner, must be altogether deprived of possession." *Malone v. Smith*, 355 Ill. App. 3d 812, 817, 823 N.E.2d 1158, 1162 (2005). Plaintiff was not required to prove that he ever excluded the Stipps from the 7.5-foot strip, but only that the Stipps never *possessed* the strip during the adverse possession period.

¶ 58 Plaintiff's evidence showed that he and his predecessors in title controlled and maintained the 7.5-foot strip during the statutory period as if they were the true owners. Miller, Holman, and plaintiff testified that no one else ever maintained the strip, or engaged in any other actions that would constitute the assertion of dominion or control over the property. Plaintiff's evidence sufficiently established that (1) he and his predecessors in title possessed the property independent of a like right in others, and (2) the Stipps were altogether deprived of possession during the 20-year statutory period. Accordingly, the trial court's finding that the possession was open, notorious, and exclusive was not against the manifest weight of the evidence.

¶ 59 *6. Claim of Title Inconsistent With That of the True Owner*

¶ 60 "Using and controlling property as owner is the ordinary mode of asserting a claim of title inconsistent with that of the true owner." *Peters v. Greenmount Cemetery Ass'n*, 259 Ill. App. 3d 566, 570, 632 N.E.2d 187, 190 (1994). This element is similar to the elements of actual possession and hostility. Based upon the evidence already mentioned, we conclude that the trial court's finding that plaintiff satisfied this element of adverse possession was not against the manifest weight of the evidence.

¶ 61 *7. Plaintiff Proved the Precise Boundaries of the Area Claimed*

¶ 62 Defendants argue that plaintiff's evidence failed to satisfy the requirement that the party claiming adverse possession must prove "by clear and convincing evidence the exact location of the boundary line to which they claim[ ]." *Schwartz*, 4 Ill. 2d at 494, 122 N.E.2d at 539. Specifically, defendants contend that because plaintiff's witnesses delivered their trial testimony before plaintiff amended his pleadings from claiming a 10-foot strip to claiming a 7.5-foot strip, it is possible that the witnesses described behaviors–such as yard maintenance and children playing–that took place entirely within the 2.5-foot strip *north* of the boundary line. This argument misses the point.

¶ 63 Plaintiff's witnesses testified that they used the entire yard all the way south to the gutter. Their testimony in that regard was not contingent upon whether the actual boundary line was 10 feet or 7.5 feet north of the gutter. As defendants acknowledge in their brief, the trial court

granted plaintiff's motion to amend the pleadings because plaintiff had reached the 10-foot figure by measuring the distance from the *inside* edge of the gutter to the boundary line of 815 Ridgewood Drive. By amending his pleadings, plaintiff no longer claimed adverse possession over the width of the gutter, but only over the land north of the gutter and south of the boundary.

¶ 64    Plaintiff's amendment to the pleadings substantively changed the relief he sought, but it had no effect on the probative value of his witnesses' earlier testimony. Although the attorneys questioned plaintiff's witnesses in reference to the "10-foot strip" lying north of the gutter, what mattered was not the exact width of the strip, but instead that the witnesses understood the strip as part of the lawn north of the gutter. None of the witnesses displayed exacting certainty as to the dimensions or measurements of the area at issue. It is inconceivable to us that the witnesses' testimony would have been different if they had been questioned about a 7.5-foot strip north of the gutter instead of a 10-foot strip. After plaintiff amended his pleadings, his witnesses' testimony was no less probative because it still showed that plaintiff and his predecessors in title used and maintained the land all the way south to the gutter. The trial court found, based upon the evidence presented, that plaintiff met his burden of proving that the exact area of adverse possession was a strip extending 7.5 feet south of the boundary line of 815 Ridgewood Drive and running east to west the length of 815 Ridgewood Drive. We conclude that this finding was not against the manifest weight of the evidence.

¶ 65    Because none of the trial court's findings as to the elements of adverse possession were against the manifest weight of the evidence, we affirm the court's order granting plaintiff ownership over the 7.5-foot strip of land immediately south of his boundary line.

¶ 66                  B. The Trial Court's Prescriptive Easement Finding
¶ 67                  1. *Burden of Proof and Standard of Review*
¶ 68    To establish an easement by prescription, the claimant must prove that the use of the land existed for 20 years and was (1) hostile or adverse, (2) exclusive, (3) continuous and uninterrupted, and (4) under a claim of right inconsistent with that of the true owner. *Wehde v. Regional Transportation Authority*, 237 Ill. App. 3d 664, 676, 604 N.E.2d 446, 455-56 (1992). The party claiming the easement must prove the elements "distinctly and clearly." *Bogner v. Villiger*, 343 Ill. App. 3d 264, 269, 796 N.E.2d 679, 685 (2003).

¶ 69    The establishment of a prescriptive easement is almost always a question of fact. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 31, 977 N.E.2d 198; *City of Des Plaines v. Redella*, 365 Ill. App. 3d 68, 75-76, 847 N.E.2d 732, 738 (2006); *Schultz v. Kant*, 148 Ill. App. 3d 565, 569, 499 N.E.2d 131, 135 (1986). Likewise, "[w]hether there was adverse use of the way under a claim of right for a period of 20 years, or the use of the way is only permissive, is almost wholly a question of fact." *Petersen v. Corrubia*, 21 Ill. 2d 525, 532, 173 N.E.2d 499, 502 (1961). Accordingly, we will affirm the trial court's finding unless it was against the manifest weight of the evidence. *JS II, LLC*, 2012 IL App (1st) 063420, ¶ 31, 977 N.E.2d 198.

¶ 70    In this case, the trial court found that plaintiff was entitled to a prescriptive easement over the portion of 821 Ridgewood Drive spanning 32.5 feet south from the 7.5-foot strip, and running east to west 101.34 feet. This area corresponded to the entire portion of the old asphalt road north of its southern gutter. Because the court found that plaintiff owned a prescriptive easement over this area prior to defendants' 2009 modifications, the court ordered defendants

to restore the road to its condition prior to those modifications. The court's order granting the prescriptive easement further prohibited defendants from interfering with plaintiff's "historic use" of the easement area, which included "driving upon, parking upon, walking upon, and any other uses of said premises as a street."

¶ 71                                                    2. *Hostile Use*

¶ 72        Defendants' argument that plaintiff failed to prove hostile use of the easement area is substantially identical to their argument concerning plaintiff's adverse possession claim. Specifically, defendants contend that plaintiff and his predecessors in title used the easement area with permission, as demonstrated by the layout of the driveway and roadway portions of 821 Ridgewood Drive. For the same reasons we affirm the trial court's finding of hostility regarding the adverse possession claim, we also conclude that the court's finding of hostile use was not against the manifest weight of the evidence regarding plaintiff's prescriptive easement claim.

¶ 73                                                    3. *Exclusive Use*

¶ 74        Exclusive use "does not mean that no one may or does use the way, except the claimant of the easement. It means no more than that his right to do so does not depend upon a like right in others, and it does not mean that the claim is necessarily well founded." *Petersen*, 21 Ill. 2d at 531, 173 N.E.2d at 502. Citing the First District case of *Catholic Bishop of Chicago v. Chicago Title & Trust Co.*, 2011 IL App (1st) 102389, 954 N.E.2d 797, defendants argue that plaintiff was required to prove that the true owners were altogether deprived of use of the easement property during the 20-year period. We disagree with this impossibly high standard, which runs afoul of supreme court precedent.

¶ 75        *Catholic Bishop* relied upon two earlier First District cases: *Chicago Steel Rule Die & Fabricators Co. v. Malan Construction Co.*, 200 Ill. App. 3d 701, 707, 558 N.E.2d 341, 345 (1990), and *City of Des Plaines*, 365 Ill. App. 3d at 76, 847 N.E.2d at 738. In *Chicago Steel*–which *City of Des Plaines* relied upon–the First District cited the Third District case of *Morris v. Humphrey*, 146 Ill. App. 3d 612, 616, 496 N.E.2d 1209, 1212 (1986), for the rule that "exclusivity does require that the rightful owner be altogether deprived of possession." *Chicago Steel*, 200 Ill. App. 3d at 707, 558 N.E.2d at 345. However, *Morris* was an adverse possession case. The *Morris* court based its holding on this court's holding in *Hartzler v. Uftring*, 114 Ill. App. 3d 427, 432, 450 N.E.2d 1208, 1212 (1983), and the supreme court's holding in *Towle v. Quante*, 246 Ill. 568, 576, 92 N.E. 967, 970 (1910)–also adverse possession cases. *Hartzler* and *Towle* held that in adverse possession cases, exclusive possession requires that the true owner be altogether deprived of possession during the 20-year statutory period.

¶ 76        Gaining ownership of land through adverse possession means divesting the true owner of title, whereas gaining an easement by prescription means merely divesting the true owner of the right to exclude the claimant from using the easement property for a certain limited purpose. *JS II, LLC*, 2012 IL App (1st) 063420, ¶ 43, 977 N.E.2d 198. Adverse possession claimants must prove that the true owner was altogether deprived of *possession* during the 20-year period. *Malone*, 355 Ill. App. 3d at 817, 823 N.E.2d at 1162. However, because of the lesser interests at stake, and because it is possible for both the owner and the claimant to

simultaneously *use* the same piece of property, prescriptive easement claimant cases need not prove that the true owner was altogether deprived of *use* during the 20-year period.

¶ 77 In *Catholic Bishop*, the First District erroneously conflated the "exclusive use" element of prescriptive easement claims with "exclusive possession" element of adverse possession claims. These elements are much different. As previously explained, possession requires some exercise of dominion or control over a piece of land. See, *e.g.*, *Ewald*, 37 Ill. App. 3d at 351, 345 N.E.2d at 527. Use, on the other hand, can be as simple as driving or walking upon a piece of land. See, *e.g.*, *Wehde*, 237 Ill. App. 3d at 678-80, 604 N.E.2d at 457-58. Proving that no one else possessed a piece of land over a 20-year period is much easier than proving that no one else used a piece of land over a 20-year period. Indeed, it is difficult to imagine any case in which a claimant could prove the latter by clear and convincing evidence. Because granting a prescriptive easement constitutes a much lesser deprivation of the true owner's rights than does granting ownership through adverse possession (*JS II, LLC*, 2012 IL App (1st) 063420, ¶ 43, 977 N.E.2d 198), it would make no sense to require a prescriptive easement claimant to satisfy a much more difficult burden of proof than an adverse possession claimant. Requiring proof that the true owner was altogether deprived of *use* for the entire 20-year period would do just that.

¶ 78 As the First District acknowledged in *Catholic Bishop*, a majority of jurisdictions have either relaxed or eliminated the exclusivity requirement for prescriptive easements. *Catholic Bishop*, 2011 IL App (1st) 102389, ¶ 30, 954 N.E.2d 797 (citing Dena Cohen, *Exclusiveness in the Law of Prescription*, 8 Cardozo L. Rev. 611 (1987)). Although exclusivity remains an element of prescriptive easements in Illinois, it does not require the claimant to prove that the true owner never once used the land during the 20-year statutory period. Instead, the supreme court's holdings in *Schmidt v. Brown*, 226 Ill. 590, 599, 80 N.E. 1071, 1074 (1907), and its progeny–such as *Leesch v. Krause*, 393 Ill. 124, 129, 65 N.E.2d 370, 372 (1946), and *Petersen*, 21 Ill. 2d at 531, 173 N.E.2d at 502–remain the controlling standard.

¶ 79 The facts of *Schmidt* were relatively simple. The Smith farm sat immediately south of the Brown farm. *Schmidt*, 226 Ill. at 591-92, 80 N.E. at 1071. Brown accessed his home via a private road that cut directly north and south through the Smith farm. *Schmidt*, 226 Ill. at 593, 80 N.E. at 1071. Smith also used that road to access his home. *Schmidt*, 226 Ill. at 591, 80 N.E. at 1071. This situation existed for approximately 40 years. *Schmidt*, 226 Ill. at 596, 80 N.E. at 1073. Schmidt, a subsequent owner of the Smith farm, attempted to exclude Brown from using the private road. *Schmidt*, 226 Ill. at 594, 80 N.E. at 1072. The supreme court held, as follows:

> "Brown's use of this road was adverse, uninterrupted, continuous, and exclusive, and under a claim of right. The fact that other persons also used the roadway does not prevent Brown's [use] from being exclusive. 'Exclusive use' does not mean that no one used the way except the claimant of the easement. It means no more than that his right to do so does not depend on a like right in others. *The use may be exclusive, within the meaning of this rule, even though Smith and others also used the road.*" (Emphasis added.) *Schmidt*, 226 Ill. at 599, 80 N.E. at 1074.

We are unable to square the First District's holding in *Catholic Bishop* with the supreme court's holding in *Schmidt*. Pursuant to the supreme court's holding in *Schmidt* and its progeny, exclusivity in prescriptive easement cases means "no more" than that the claimant's right to use the easement property does not depend on a like right in others. *Petersen*, 21 Ill. 2d at 531, 173 N.E.2d at 502.

- 13 -

¶ 80 In this case, plaintiff sufficiently proved that his use of the easement property was exclusive. He and his predecessors in title believed that the roadway was a city street, entitling them to use it in the manner that they did during the 20-year statutory period. It does not matter whether that claim of right was well founded. *Petersen*, 21 Ill. 2d at 531, 173 N.E.2d at 502. Similar to plaintiff's exclusive possession of the adverse possession property, plaintiff and his predecessors' use of the easement property did not depend on the rights of others.

¶ 81 Even assuming, *arguendo*, that the true owner's use of the roadway would have defeated exclusivity, we note the evidence showed that the Stipps did not live in the subdivision during the 20-year statutory period. The record contains no evidence that the owners of 821 Ridgewood Drive entered that property during the 20-year period. Accordingly, the trial court could have reasonably concluded that the Stipps did not use the easement property during that period. The court's finding that plaintiff proved his exclusive use of the easement property was not against the manifest weight of the evidence.

¶ 82 *4. Continuous and Uninterrupted Use*

¶ 83 Defendants' brief to this court does not address the continuous and uninterrupted element of plaintiff's prescriptive easement claim. Suffice it to say that plaintiff's evidence proved that the owners of 815 Ridgewood Drive used the easement property on an almost daily basis throughout the 20-year statutory period. The Stipps never attempted to prevent the owners of 815 Ridgewood Drive from using the easement property. We conclude that the trial court's finding in favor of plaintiff as to this element was not against the manifest weight of the evidence.

¶ 84 *5. Claim of Right Inconsistent With That of the True Owner*

¶ 85 For the same reasons that plaintiff and his predecessors' use of the easement property was hostile and exclusive, their claim of right to use the easement property was also inconsistent with the rights of the true owner. Plaintiff and his predecessors in title claimed a right to use the roadway based upon their understanding that it was public property. As with plaintiff's adverse possession claim, it does not matter whether this claim of right was well founded, so long as it existed for the entire 20-year statutory period. Using the private roadway as if it were public property constitutes use under a claim of right inconsistent with that of the true owner. Based upon the evidence presented, the trial court's finding as to this element was not against the manifest weight of the evidence.

¶ 86 Because none of the trial court's findings as to the elements of plaintiff's prescriptive easement claim were against the manifest weight of the evidence, we affirm the court's order granting plaintiff a prescriptive easement.

¶ 87 C. The Scope of the Trial Court's Remedies

¶ 88 Defendants argue that even if plaintiff proved his rights to ownership by adverse possession and a prescriptive easement, the trial court's remedies went beyond the scope of the proof. Specifically, defendants contend that (1) the court's relief, which granted plaintiff ownership and an easement over the portions of 821 Ridgewood Drive east of the driveway, was against the manifest weight of the evidence, and (2) the court improperly ordered

defendants to restore the roadway to the condition it was in prior to the April 2009 modifications. We disagree.

¶ 89                              1. *The Area East of the Driveway*

¶ 90      Defendants contend that plaintiff failed to prove his adverse possession and prescriptive easements claims with regard to the portion of 821 Ridgewood Drive east of the driveway. Specifically, they assert that Miller's testimony failed to establish his continuous assertion of ownership and use of that area while he was living at 815 Ridgewood Drive.

¶ 91      Miller testified that he maintained the lawn east of the driveway all the way south to the gutter. For a period of time, he parked a trailer and a "hunting thing" in the grassy area just north of the gutter and east of the driveway, or on the roadway itself east of the driveway. Miller's children would play and ride bikes in the roadway. Miller testified that he and his wife drove over the roadway and into the driveway every day. When Miller backed out of his driveway, he "would back out and square [him]self probably about where the gravel road was and then head toward Ridgewood." Miller's testimony established that his assertion of ownership and use of the portions of 821 Ridgewood Drive east of his driveway was continuous and uninterrupted. We conclude that the trial court's findings regarding the portion of 821 Ridgewood Drive east of the driveway were not against the manifest weight of the evidence.

¶ 92                              2. *Restoration of the Roadway*

¶ 93      Defendants argue that, assuming the trial court properly granted plaintiff an easement over the area of 821 Ridgewood Drive where the asphalt roadway used to be, the court's mandatory injunctive relief requiring defendants to restore the roadway was improper because plaintiff failed to demonstrate that defendants' 2009 removal of the asphalt roadway interfered with his use of the easement. In their brief, defendants characterize the 2009 modifications to the roadway as "cosmetic," and insufficient to threaten plaintiff's historical use of the easement area, which the court found to include "driving upon, parking upon, walking upon, and any other common uses of said premises as a street."

¶ 94      The granting or denying of injunctive relief is reviewed for an abuse of discretion. *Seymour v. Harris Trust & Savings Bank of Chicago*, 264 Ill. App. 3d 583, 595, 636 N.E.2d 985, 993 (1994). An abuse of discretion exists only when no reasonable person would have adopted the trial court's view. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 21, 987 N.E.2d 355.

¶ 95      "[T]he use to which an easement is devoted or for which it is granted determines its character, and to the extent for which it is necessary to carry out the purpose of the grant, the rights of the owner of the easement are paramount." (Internal quotation marks omitted.) *Schnuck Markets, Inc. v. Soffer*, 213 Ill. App. 3d 957, 974, 572 N.E.2d 1169, 1182 (1991) (quoting *Farmers Grain & Supply Co. of Warsaw v. Toledo, Peoria & Western R.R.*, 316 Ill. App. 116, 123, 44 N.E.2d 77, 80 (1942)). "An easement's actual use determines its width." *JS II, LLC*, 2012 IL App (1st) 063420, ¶ 44, 977 N.E.2d 198.

¶ 96      In this case, the trial court determined that plaintiff was entitled to an easement over the portions of 821 Ridgewood Drive once covered by the asphalt road. The easement encompassed the "common uses of said premise *as a street*." (Emphasis added.) The court, after presiding over a 6-day bench trial at which it heard lengthy testimony from witnesses on

- 15 -

both sides and accepted dozens of exhibits into evidence, found that defendants unreasonably interfered with plaintiff's use of the easement by removing the 35-foot-wide asphalt road and replacing it with a 15-foot-wide gravel drive. Based upon the evidence and arguments, the court found that equity required defendants to restore the easement area to the condition it was in prior to the 2009 modifications. We disagree that this ruling constituted an abuse of discretion.

¶ 97 Defendants' removal of the asphalt roadway was clearly more than a cosmetic change. Although it was still physically possible for an ordinary vehicle to get in and out of the driveway, plaintiff and his predecessors' historical use of the easement area was much broader than simple ingress and egress to the driveway. They used the roadway for parking, walking, and general recreation. The new 15-foot-wide gravel road was not suitable for those uses. Even with regard to ingress and egress, plaintiff testified that he was no longer able to back his boat trailer out of his driveway following the 2009 modifications, particularly because defendants oddly chose to place their mailbox along the north side of the new gravel road several feet directly east of plaintiff's driveway. See *Schaefer v. Burnstine*, 13 Ill. 2d 464, 469, 150 N.E.2d 113, 116 (1958) ("The rule obtaining in this State is that the owner of a right of way for ingress and egress has the right to use the full width of the area or strip having definite boundaries, unhampered by obstructions placed thereon."). Based upon the evidence presented, the court's determination of the appropriate scope of injunctive relief was well within its discretion.

¶ 98 As a final matter, we express our gratitude to the trial court for stating its findings and reasoning in a written order, which we found very useful in our consideration of this appeal.

¶ 99 III. CONCLUSION

¶ 100 For the foregoing reasons, we affirm the trial court's judgment.

¶ 101 Affirmed.